Neil S. MASSEY, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–135.

United States Court of Veterans Appeals.

Argued Aug. 8, 1994.

Decided Dec. 6, 1994.

Ronald L. Smith, Washington, DC, for the appellant. C. Larry O'Rourke, Washington, DC, entered an appearance.

R. Randall Campbell, Deputy Asst. Gen. Counsel, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and Deborah W. Singleton, Washington, DC, were on the brief, for the appellee. Adrienne Koerber, Deputy Asst. Gen. Counsel, Washington, DC, entered an appearance.

Before NEBEKER, Chief Judge, and MANKIN and STEINBERG, Judges.

MANKIN, Judge:

Neil S. Massey (appellant) appeals an October 28, 1992, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to an increased rating for a neurosis currently rated at 10% disabling. The appellant claims the BVA erred and its decision should be reversed because the relevant evidence in the record compels that he is entitled to a 30% disability rating under the benefit of the doubt rule. However, the Secretary urges remand for the Board to develop further the reasons or bases for its conclusion. The Court will vacate the decision of the Board and remand the matter for further development and readjudication.

## I. Factual Background

The appellant served in the United States Navy from July 15, 1942, to August 9, 1944.

He is currently service connected for psychoneurosis rated at 10% disabling under 38 C.F.R. § 4.132, Diagnostic Code (DC) 9405 (1993). The present degree of disability was assigned by a rating decision dated March 23, 1976, designating an effective date of November 18, 1975, and a service connection date of April 1, 1946, and granting a 0% disability rating from April 1, 1946, to November 18, 1975. The appellant has also apparently been found permanently and totally disabled for non-service-connected pension. In July 1987, the appellant requested an increased rating due to an increase in the severity of his psychoneurosis. In support of his claim, he submitted a letter from W.C. Harvey, Jr., M.D., stating that he demonstrated increased inflexibility, required more medication, and was having greater difficulty in coping with his underlying disabilities affecting walking, standing, and sitting. Dr. Harvey recommended that he be evaluated by VA for a 30% rating.

The record further discloses that the appellant was examined by Dr. Robert C. Calkins, a private psychiatrist, on April 30, 1987. Dr. Calkins found that he

> talked incessantly and ruminated about what a "bad deal" he's getting. Mood and affect was paranoid, depressed, agitated and markedly angry. Intelligence appears low average. Insight and judgment is poor. Sensorium is clear and he is oriented times three. Calculations are poor and abstract thinking is extremely concrete.

Under Axis I Dr. Calkins diagnosed the appellant with dysthymic disorder, and under Axis II he diagnosed him as paranoid, with passive-aggressive personality disorder. (At the time of the April 30, 1987, examination, Axis I was defined as "Clinical Syndromes, Conditions Not Attributable to a Mental Disorder That Are a Focus of Attention or Treatment, and Additional Codes." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS: DSM–III 23 (3d ed. 1980). Axis II was defined as "Personality Disorders and Specific Developmental Disorders." *Id.* "Axes I and II comprise the entire classification of mental disorders plus Conditions Not Attrib-

utable to a Mental Disorder That Are a Focus of Attention or Treatment.")

The appellant was also examined by a VA psychiatrist, Dr. Nellie T. Anosa, on August 18, 1987. The examination was specifically limited to an examination of his service-connected psychoneurosis. Dr. Anosa concluded:

> Mental status examination shows a male who is ambulatory, ... alert and coherent and appears to be of average intelligence, no evidence of any Psychosis; affect and mood were appropriate. Memory was unimpaired, there were no delusional ideas expressed. Impression is anxiety neurosis, veteran is in my opinion competent for VA purposes.

The appellant submitted a statement from Anne E. Talbot, R.N., M.S., C.S., a psychotherapist, dated in February 1988. This psychotherapist stated:

> [The appellant] has asked me to write a report recommending that he be evaluated as 50% psychiatrically disabled.

> While it is not my prerogative to specify a disability determination, I will state that [the appellant] does present with serious impairment of his ability to establish and maintain effective or favorable relationships with people.... This disorder results in markedly limited social and occupational functioning.

Ms. Talbot also agreed with Dr. Calkin's April 30, 1987, opinion that the appellant has a "significant personality disorder."

A second VA psychiatric examination was conducted on September 26, 1988, by Dr. J. Babin. Dr. Babin found that the appellant had

> [n]o thought disorder—speech clear—[the appellant] describes [a] phobia re[garding] water since his grandson's death [due to drowning]—(he identified [the] body)—has an obsession re[garding] being impotent because of having a steel washer loose in his hip socket—No aud[itory]/visual halluc[inations], paranoia or any symptoms of psychosis—describes general anxiety state [and] easy irritability—not suic[idal]/hom[icidal]—cognitive ability ... [recent] memory ... impaired ... past

memory adequate—poor abstract thought. Tends to be concrete in thinking—[the appellant] is competent for VA purposes.

He was diagnosed on Axis I as having general anxiety disorder, phobia of water, and obsessive thought about impotency. He was diagnosed as having no Axis II condition; i.e., no personality disorder was found. This finding conflicts with the findings of Dr. Calkin's April 30, 1987, examination and Ms. Talbot's March 22, 1988, examination. It appears, however, to be in accord with the prior VA examination by Dr. Anosa on August 18, 1987.

In a rating decision dated December 6, 1988, the VA regional office (RO) denied the appellant's claim for an increased rating. The decision based the denial on the September 26, 1988, examination and stated: "VA exam shows [that the veteran] describes phobia about water since his grandson's death. He has easy irritability [and] general anxiety state. He tends to be concrete in his thinking. There was no thought disorder [and] speech was clear."

The appellant filed his Notice of Disagreement as to this decision on January 31, 1989. Thereafter, he submitted a statement from Mr. Martin R. Gordon, dated June 15, 1989. Mr. Gordon stated that he had personally observed that the symptoms of the appellant's condition had grown worse over time: "I noticed that [the appellant] was getting worse, he would fly off the handle for no reason and get so upset he would get sick and have to go bed."

The appellant appeared at a personal hearing on appeal on August 6, 1990. He testified under oath, "I'm very irritable, it's hard for me to get . . . along with anybody and I guess you can call me a loner but the first little thing will set me off." He also stated that his condition has made him so irritable that he has struck others, and that his level of anxiety has caused him to discontinue activities outside of his home or with others. One of his representatives testified that the appellant had been treated by Dr. Pete Johnson. On October 25, 1990, the hearing officer confirmed and continued the 10% rating.

The Board then remanded the case to the RO, based upon an issue not here on appeal—entitlement to benefits due to disablement by treatment or vocational rehabilitation, 38 U.S.C. § 1151. After the RO addressed the remanded issue, the Board addressed the appellant's claim for an increased rating for neurosis. The Board found that the evidence of record did not indicate that the appellant's symptomatology as manifested by his service-connected psychoneurosis satisfied the criteria for a rating in excess of 10% disabling. The Board determined:

> On mental status examination [in September 1987], the [appellant] was both alert and coherent, with no evidence of psychosis. Both his affect and mood were appropriate, and his memory was unimpaired. As of the time of a more recent VA psychiatric examination in September 1988, the [appellant] stated that he had been depressed "off and on" for a period of years following the death of his grandson. . . . On further evaluation at the September 1988 examination, the [appellant] gave no history of hospitalization for his service-connected psychiatric disability. Mental status examination disclosed no evidence of any thought disorder. . . . The [appellant's] cognitive ability and recent memory were somewhat impaired. Past memory was adequate, and there was some evidence of poor abstraction ability, as evidenced by the [appellant's] tendency to be somewhat concrete in his thinking.

This appeal followed.

## II. Analysis

### A. Claim for Increased Rating

◼ The appellant contends that the Board's October 28, 1992, decision should be reversed because the relevant evidence in the record indicates that he is entitled to a 30% disability rating under the benefit of the doubt rule in 38 U.S.C. § 5107(b). He argues that the benefit of the doubt rule must be applied "every time the Board makes a material determination in a case." Appellant's Brief at 10. On the contrary, as this Court held in Gilbert v. Derwinski, 1 Vet. App. 49, 53–56 (1990), section 5107(b) expressly provides that this rule must be applied only when the evidence is in relative

equipoise. *See also Hayes v. Brown,* 5 Vet. App. 60, 69–70 (1993).

■ In this instance, however, we are unable to determine whether the benefit of the doubt rule was rejected properly because the Board failed to apply the relevant regulation, 38 C.F.R. § 4.132, Diagnostic Code (DC) 9405 (1993). We recognize that the regulatory framework under which the Board must operate frequently presents "a confusing tapestry for the adjudication of claims." *Hatlestad v. Derwinski,* 1 Vet.App. 164, 167 (1991) (unemployability of particular claimant); *see also Hood v. Brown,* 4 Vet.App. 301, 303 (1993) (explanation of reasons or bases regarding claim under DC 9405). Indeed, the schedule of ratings for psychoneurotic disorders under DC 9405 in 38 C.F.R. § 4.132 does not present a clear basis for describing the degree of impairment. *See Hood,* 4 Vet. App. at 303.

Due to the lack of clarity in the § 4.132 diagnostic codes (DCs), the Board's conclusions regarding a claimant's degree of impairment "must be justified by a clear statement of reasons or bases and not by the equivalent of 'because I say so.'" *Id.* Before the Court can determine whether the Board has provided an adequate statement of reasons or bases, however, the Court must assess whether the Board has applied correctly the provisions of DC 9405. In this instance, we find as a matter of law that the Board has not correctly applied the relevant regulation.

The diagnostic code under which the appellant's condition was rated, DC 9405, states: "Dysthymic disorder; Adjustment disorder with depressed mood; Major depression without melancholia." 38 C.F.R. § 4.132, DC 9405. The appellant is currently rated as 10% disabled and seeks an increased rating. The next higher rating is 30%, the criteria for which are "Definite impairment in the ability to establish or maintain effective and wholesome relationships with people. The psychoneurotic symptoms result in such reduction in initiative, flexibility, efficiency and reliability levels as to produce definite industrial impairment." 38 C.F.R. § 4.132 (General Rating Formula for Psychoneurotic Disorders, following DC 9411).

The Board found that the appellant "was both alert and coherent, with no evidence of psychosis." The Board further found that "his affect and mood were appropriate, and his memory was unimpaired." It indicated that "the [appellant] gave no history of hospitalization" and a "[m]ental status examination disclosed no evidence of any thought disorder." The Board also found that his "cognitive ability and recent memory were somewhat impaired." Finally, the Board found that "[p]ast memory was adequate, and there was some evidence of poor abstraction ability, as evidenced by the [appellant's] tendency to be somewhat concrete in his thinking."

At the outset we note that these findings, except with respect to capacity for abstract thought, generally appear not to relate to the rating criteria set out for DC 9405. There is no discussion of the impairment or absence of the ability to establish and maintain relationships. There is no discussion of the reduction in or absence of initiative, efficiency, or reliability levels so "as to produce definite industrial impairment."

Rather, the Board's findings relate to rating criteria which are almost entirely outside the DC 9405 criteria. The rating criteria require no findings as to alertness, coherence, evidence of psychosis, affect, mood, or memory. Nevertheless, the Board found discussion of these factors to be probative. For example, the Board found persuasive the fact that the appellant had not been hospitalized for his disability and showed "no evidence of psychosis." Yet, nowhere in the rating formula is there any requirement regarding hospitalization or psychosis. On the other hand, the Board determined that there was "some evidence of poor abstraction ability, as evidenced by the [appellant's] tendency to be somewhat concrete in his thinking." Although abstraction ability and concrete thinking appear to relate to the DC 9405 criterion of lack of "flexibility," the Board was clearly erroneous in its conclusion that the appellant was "somewhat concrete in his thinking." To the contrary, the only evidence of record showed that the appellant's "abstract thinking is extremely concrete", that he has "poor abstract thought," and that he "tends to be concrete in thinking". We

thus reverse that conclusion. *See* 38 U.S.C. § 7261(a)(4) (Court to reverse "clearly erroneous" findings of the Board).

▮ The Board's consideration of factors which are wholly outside the rating criteria provided by the regulations is error as a matter of law. *Pernorio v. Derwinski,* 2 Vet.App. 625, 628 (1992). "In using a standard that exceeded that found in the regulation, the Board committed legal error." *Id.* Therefore, the case will be remanded for the Board to be readjudicated under the correct DC criteria.

On remand, the Board may obtain a new psychiatric examination if the examination will aid the Board in making an informed decision. However, since the appellant's claim relates to an increase in his disability claimed originally in 1987, the Board must limit the examination to the symptoms present after 1987 and before August 6, 1990, the date of the RO hearing. In conducting an examination, the examining physician must take into account the records dating prior to 1987 and compare them to the records and symptoms regarding the appellant's condition between 1987 and August 6, 1990. *See Green v. Derwinski,* 1 Vet.App. 121, 124 (1991). If the psychiatric examiner is unable to determine the symptoms present during that 1987–90 period, the Board must decide the question of the 1987–88 disability rating on the basis of the current records. Furthermore, if the psychiatric examination does not provide any information regarding the appellant's symptoms from 1987 to August 6, 1990, and the Board nonetheless elects to use it in providing its reasons or bases for again denying the appellant's claim, the Board must provide the justification for its reliance on the examination.

▮ We note that the appellant has presented a well-grounded claim for a rating increase. 38 U.S.C. § 5107(a); *see Proscelle v. Derwinski,* 2 Vet.App. 629 (1992). The VA has a duty to assist a veteran to develop a claim that is well grounded. 38 U.S.C. § 5107(a); 38 C.F.R. 3.159 (1993); *see Littke v. Derwinski,* 1 Vet.App. 90 (1990). The duty to assist is neither optional nor discretionary, and includes the duty to assist a claimant to obtain records pertinent to his claim. *Littke,* 1 Vet.App. at 92. Here, the appellant submitted a statement from Dr. Harvey indicating that he was treating the appellant and one of the appellant's representatives testified that the appellant had been treated by Dr. Pete Johnson. Such treatment records do not appear in the record, yet they could be supportive of the appellant's claim. Thus, the Board is instructed to assist the appellant in obtaining these records. Furthermore, the record contains the sworn testimony of Mr. H. Duane Riddle, one of the appellant's service representatives, before a personal hearing board in August 1990. Mr. Riddle testified that the appellant had been treated by Dr. Pete Johnson. On remand, the Board must also seek to obtain any relevant records from Dr. Johnson's treatment. Any such records obtained that relate to the appellant's state prior to August 6, 1990, should be made available to the examiner.

### B. The Secretary's Authority to Assign Error and Recommend Remedy

The appellant contends that the Board's decision should be reversed based upon the benefit of the doubt rule. The Secretary asserts, on the other hand, that the case should be remanded for a more thorough development of reasons or bases. In response, the appellant argues that the Secretary is not empowered to raise issues which are not raised by the appellant, and his counsel expressly eschews raising the inadequacy of the Board's decision.

The appellant argues that because he is the party to file a Notice of Appeal and frame the issues, U.S. Vet.App.R. 3 and 28(a)(3), the Secretary's confession of error and suggestion of a remedy in a form not presented by the appellant is an inappropriate expansion of the issues. The appellant claims that this constitutes an appeal— "seek[ing] review"—in this Court by the Secretary and is specifically prohibited by this Court's organic legislation. 38 U.S.C. §§ 7252(a), 7266(a).

These arguments were briefed in *Johnson v. Brown,* 7 Vet.App. 95 (1994), where the

appellant's counsel was the same as here. The Court held there:

> Under this broad authority [of 38 U.S.C. § 7261(a)(1)]—indeed, mandate—to carry out comprehensive judicial review of BVA decisions, the Court undoubtedly would have jurisdiction to consider those same Board errors if raised by the appellant or noted, sua sponte, by the Court itself. Hence, the fact that these errors were raised by the Secretary cannot deprive the Court of jurisdiction to consider them.
>
> ... [A]lthough the Court does not dispute the appellant's contention that in order to seek court review a party must file an NOA, *see* 38 C.F.R. § 7266(a); *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam); *Jurgens v. McKasy,* 905 F.2d 382, 385 (Fed.Cir.1990); *McCall v. Brown,* 6 Vet.App. 215, 217 (1994) (per curiam order); *Cerullo [v. Derwinski,* 1 Vet.App. 195, 197 (1991)], the Court does not find merit in the appellant's arguments equating confession of errors with "seeking review".

*Johnson,* 7 Vet.App. at 98.

### III. Conclusion

Upon consideration of the record, the parties' pleadings, and their oral arguments, the Court VACATES the October 28, 1992, decision of the Board of Veterans' Appeals and REMANDS the matter for further development and readjudication consistent with this opinion.