Citation Nr: 1221998 
Decision Date: 06/22/12 Archive Date: 07/02/12

DOCKET NO. 09-00 436 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for tinnitus. 

2. Entitlement to service connection for sleep apnea, to include as secondary to service-connected asthma and/or posttraumatic stress disorder (PTSD). 


REPRESENTATION

Appellant represented by: Florida Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Appellant




ATTORNEY FOR THE BOARD

M. Zawadzki, Counsel


INTRODUCTION

The Veteran served on active duty from February 1968 to November 1979. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a May 2008 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, in which the RO, in pertinent part, denied service connection for tinnitus and sleep apnea. 

In June 2010, the Veteran testified during a Board hearing before the undersigned Veterans Law Judge at the RO; a transcript of that hearing is of record. 

In January 2011, the Board remanded the claims on appeal, to the RO via the Appeals Management Center (AMC) in Washington, DC, for further development. After completing additional development, the AMC continued to deny the claims (as reflected in an April 2012 supplemental SOC (SSOC)), and returned these matters to the Board for further appellate consideration.

In June 2012, subsequent to issuance of the April 2012 SSOC, the Veteran submitted additional medical evidence in support of his claim for service connection for sleep apnea. While this evidence was not accompanied by a waiver of RO consideration, as the claims on appeal are being remanded, the Agency of Original Jurisdiction (AOJ) will have the opportunity to consider this evidence on remand. See 38 C.F.R. § 20.1304 (2011).

As a final preliminary matter, the Board notes that the claims file reflects that the Veteran was previously represented by the American Legion (as reflected in a September 2002 VA Form 21-22, Appointment of Veterans Service Organization as Claimant's Representative). In June 2008, the Veteran filed a VA Form 21-22 appointing Disabled American Veterans as his representative. In December 2008, the Veteran filed a VA Form 21-22 appointing the Florida Department of Veterans Affairs as his representative. The Board recognizes the change in representation.

The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the appellant if further action is required.


REMAND

Unfortunately, the record reflects that further action on the claims on appeal is warranted, even though such action will, regrettably, further delay an appellate decision in this appeal.

A remand by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. See Stegall v. West, 11 Vet. App. 268, 271 (1998). In Stegall the Court held that "where... the remand orders of the Board... are not complied with, the Board itself errs in failing to insure compliance." Id. 

As was noted in the Board's January 2011 remand, the Veteran claims that he has tinnitus due to exposure to acoustic trauma during his period of active duty and has sleep apnea which is either directly related to active service or is secondary to his service-connected asthma and/or PTSD. As regards his claimed tinnitus, the Board noted in January 2011 that a November 2007 VA examination report noted that the Veteran spent 12 years in the U.S. Air Force and, therefore, exposure to acoustic trauma was conceded. It was further noted that ear protection was provided "at times." At the time of that examination, the Veteran reported that his tinnitus had its onset in service and had increased in intensity. The VA examiner opined that the Veteran's tinnitus was less likely than not the result of military noise exposure because his hearing was normal during his period of active service. Significantly, during the June 2010 Board hearing, the Veteran testified that his tinnitus symptoms were not present prior to service and he had had little post-service noise exposure. In the January 2011 remand, the Board observed that the Veteran was competent to report the onset of his tinnitus, and his reports could serve to support his claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. See 38 C.F.R. § 3.303(a) (2011); see also Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006). In light of the foregoing, the Board remanded the claim for service connection for tinnitus to obtain an additional medical opinion regarding whether the Veteran's current tinnitus was related to service. 

The Board instructed that the VA examiner should discuss the statements from the Veteran regarding the in-service occurrence of tinnitus, his conceded in-service noise exposure, the June 2010 Board hearing transcript, and the November 2007 VA examination report and should opine as to whether it was at least as likely as not that any current tinnitus was etiologically related to the Veteran's period of active service. 

The Veteran was afforded a VA examination to evaluate his claimed tinnitus in February 2011. The examiner acknowledged review of the claims file. She noted that the Veteran's entrance and discharge audiograms, as well as three audiograms from his active duty service, revealed normal hearing in both ears. She added that audiograms performed in November 2007 and April 2009 revealed bilateral high frequency hearing loss, and noted that, during VA treatment in April 2009, the Veteran complained of long-standing tinnitus which was worsening. The Veteran gave a history of tinnitus which had been present since before his discharge from service. Specifically, he reported that a high-pitched "whine", worse in his right ear than his left, was first noticed towards the end of his military duty in Vietnam. He stated that he was an avionics technician in Vietnam and, as such, had been exposed to jet engine noise from very loud aircraft. He reported using ear protection when it was available, but stated that it was not always available. He further described noise exposure from incoming enemy rockets and training with various weapons. The Veteran denied occupational or recreational noise exposure, stating that he worked as a mailman. 

The diagnosis following audiological testing was bilateral mild high frequency hearing loss. The examiner opined that the Veteran's tinnitus was at least as likely as not a symptom associated with his hearing loss. The examiner opined that the Veteran's tinnitus was less likely than not a result of the noise to which he was exposed during service. In providing this opinion, she noted that the Veteran was an avionics technician who was exposed to jet engines and afterburners and used weapons without ear protection. In giving a rationale for her opinion, the examiner stated that, while noise such as that to which the Veteran was exposed during service could damage hearing, his discharge audiogram was entirely normal. She went on to opine that the Veteran's tinnitus was related to his current hearing loss, but that his hearing loss was likely due to causes other than military noise exposure. 

Unfortunately, while the February 2011 VA examiner noted the Veteran's report of the onset of tinnitus during service in the medical history portion of the VA examination report, she did not discuss the Veteran's reported in-service occurrence of tinnitus in providing her medical opinion, despite the Board's January 2011 instructions. See also February 2011 statement from Mr. O.J.M., who served with the Veteran, regarding inservice noise exposure and ringing in the ears. Indeed, the VA examiner appears to have based her opinion regarding the etiology of the Veteran's current tinnitus on a finding that his discharge audiogram was normal. In Dalton v. Nicholson, 21 Vet. App. 23 (2007), the United States Court of Appeals for Veterans Claims (Court) determined an examination was inadequate where the examiner did not comment on the Veteran's report of in-service injury and instead relied on the absence of evidence in the Veteran's service treatment records to provide a negative opinion. Additionally, while the examiner attributed the Veteran's current tinnitus to his hearing loss, which, she opined was likely due to causes other than military noise exposure, she did not indicate these potential other causes for the Veteran's hearing loss. 

Because VA undertook to provide a VA examination to evaluate the claimed tinnitus, the Board must ensure that such an examination is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); see also Stefl v. Nicholson, 21 Vet. App. 120 (2007). Accordingly, the Board finds that a supplemental opinion is in order. The AMC/RO should arrange for the Veteran to undergo VA examination only if the audiologist who conducted the February 2011 VA examination is not available, or the designated audiologist is unable to provide the requested opinion without examining the Veteran.

Similarly, the Board finds that a supplemental opinion regarding the claim for service connection for sleep apnea is also in order. In this regard, in the January 2011 remand, the Board noted that the Veteran had been afforded a VA examination to evaluate the etiology of his sleep apnea in November 2007 and that, following a recitation of the Veteran's pertinent medical history, to include a diagnosis of sleep apnea around 1996 or 1997, the examiner opined that the Veteran's claimed disorder was less likely than not secondary to his service-connected asthma or PTSD. In light of the fact that the VA examiner did not provide an opinion as to whether the Veteran's sleep apnea was directly related to his military service, or whether his sleep apnea was permanently aggravated beyond its normal progression by PTSD or asthma, the Board remanded the claim to obtain an additional medical opinion regarding whether the Veteran's current sleep apnea was related to service or was caused or aggravated by his service-connected PTSD or asthma. In the remand, the Board noted the Veteran's June 2010 testimony, that he had a more than 30 year history of snoring and breathing difficulty while sleeping, beginning in the 1970s. 

The Board instructed that the VA examiner should discuss the statements from the Veteran regarding symptoms of snoring and breathing difficulty during sleep in the early 1970s, the June 2010 Board hearing transcript, and the November 2007 VA examination report and should opine as to whether it was at least as likely as not that the Veteran's current sleep apnea had its onset during service; whether it was at least as likely as not that the Veteran's sleep apnea was proximately due to a currently service-connected disability, to include PTSD and/or asthma; and whether it was at least as likely as not that sleep apnea was aggravated as a result of currently service-connected PTSD and/or asthma. 

The Veteran was afforded a VA examination to evaluate his sleep apnea in February 2011. The examiner acknowledged review of the claims file and noted that the Veteran correlated the onset of his symptoms of sleep apnea with his active military service, when his roommates complained of his loud snoring. She further noted that, over time, the Veteran's wives had complained of the same and had also reported witnessing apneic episodes. The diagnosis following examination was obstructive sleep apnea syndrome. The examiner opined that it was less likely than not that the Veteran's sleep apnea was caused by or a result of his PTSD and/or asthma. In providing a rationale for this opinion, she stated that current medical literature did not support PTSD and/or asthma as a cause or risk factor for developing sleep apnea. The examiner also opined that the Veteran's sleep apnea was less likely than not "permanently aggravated by onset during service." In providing a rationale for this opinion, she stated that there was no documentation available at the time of examination to support the Veteran's claimed sleep apnea symptom of snoring during his military service. 

Despite the Board's January 2011 instructions, the examiner did not address whether the service-connected PTSD and/or asthma aggravated his sleep apnea. See 38 C.F.R. § 3.310(b). Accordingly, the Board finds that a supplemental opinion is in order. See Stegall, 11 Vet. App. at 271; see also Barr, 21 Vet. App. at 312; Stefl, 21 Vet. App. 120. The AMC/RO should arrange for the Veteran to undergo VA examination only if the examiner who conducted the February 2011 VA examination is not available, or the designated examiner is unable to provide the requested opinion without examining the Veteran.

The Board notes that, the assessment following VA treatment in July 2008 included asthma and sleep apnea, likely related to weight and respiratory condition. In rendering the requested opinion, the VA examiner should consider and address this VA treatment record. Additionally, in support of his claim for service connection for sleep apnea, the Veteran has submitted two February 2011 letters from a fellow servicemember, O.J.M. Mr. O.J.M. reported that he was the Veteran's roommate during service and, during that time, the Veteran snored a lot and would stop breathing at times. In providing the requested opinion, the VA examiner should consider and address this February 2011 letter from Mr. O.J.M. 

In addition to the foregoing, the claims file reflects that there are outstanding records which are potentially pertinent to the appeal. 

In his September 2002 claim for service connection for PTSD, the Veteran reported that he had received treatment at the Fort Lauderdale Vet Center. During VA treatment in January 2003, he also reported that he had been going to the Vet Center for treatment for PTSD. Despite the foregoing, no Vet Center treatment records are currently available for the Board's review. In light of the Veteran's assertion that his sleep apnea is due to his PTSD, these treatment records are potentially pertinent to the claim for service connection for sleep apnea. As any Vet Center treatment records are potentially pertinent to the appeal and within the control of VA, they should be obtained and associated with the claims file. Dunn v. West, 11 Vet. App. 462, 466-67 (1998); Bell v. Derwinski, 2 Vet. App. 611, 613 (1992). 

The Board further notes that the most recent VA treatment records currently associated with the claims file are dated in June 2009. On remand, the AMC/RO should obtain all outstanding pertinent VA treatment records, to include any records of treatment from the Miami VA Healthcare System (HCS) (to include the Broward County Outpatient Clinic (OPC) and the Hollywood Community Based Outpatient Clinic (CBOC)) dated since June 2009. 

VA also has a duty to obtain relevant records of treatment reported by private physicians. Massey v. Brown, 7 Vet. App. 204 (1994). During VA treatment in April 2006, the Veteran reported that he had been hospitalized two months earlier for a possible angina attack, but was told that he just had a bad asthma attack. In light of the Veteran's assertion that his sleep apnea is caused by his breathing disability, records from this hospitalization are potentially pertinent to the claim for service connection for sleep apnea; however, such records are not currently available for the Board's review. On remand, the AMC/RO should attempt to obtain these private treatment records. 

Additionally, a January 2008 VA treatment record reflects that the Veteran had a sleep study performed over ten years earlier at Memorial West. While an April 1999 sleep study from Memorial Hospital Pembroke has been associated with the claims file, on remand, the AMC/RO should clarify whether the Veteran had an additional sleep study at Memorial West and, if so, attempt to obtain any pertinent records. 

Similarly, during VA treatment in July 2007, the physician noted that the Veteran took prescriptions for his asthma as prescribed by his private physician, and was using a continuous positive airway pressure (CPAP) machine for sleep apnea as prescribed by a private neurologist. While one private treatment record, from Dr. M.M., dated in December 2005, has been associated with the claims file, on remand, the AMC/RO should ask the Veteran to identify any additional outstanding pertinent private treatment records, and should attempt to obtain any adequately identified records. 

Accordingly, the case is REMANDED for the following action:

1. Request that the Veteran provide the names and addresses of any and all health care providers who have provided treatment for tinnitus and/or sleep apnea. After acquiring this information and obtaining any necessary authorization, obtain and associate any outstanding pertinent records with the claims file or Virtual VA e-folder. A specific request should be made for records of treatment from the Fort Lauderdale Vet Center, records of treatment from the Miami VA HCS (to include the Broward County OPC and the Hollywood CBOC), dated since June 2009, and records of treatment related to hospitalization for asthma in February 2006 (as described during VA treatment in April 2006).

The AMC/RO should ask the Veteran to clarify whether he had a sleep study at Memorial West, in addition to his April 1999 sleep study at Memorial Hospital Pembroke. If so, the AMC/RO should attempt to obtain any outstanding pertinent records. 

The AMC/RO should also ask the Veteran to identify any additional outstanding pertinent private treatment records (to include records from a private physician and neurologist, as described during VA treatment in July 2007), and should attempt to obtain any adequately identified records. 

2. After all available records have been associated with the claims file, forward the claims file to the audiologist that conducted the February 2011 VA audiological examination, if available, for a supplemental medical opinion. The claims folder must be made available to the audiologist for review of the case. A notation to the effect that this record review took place should be included in the report of the audiologist.

The examiner should specifically acknowledge and discuss the statements from the Veteran regarding the in-service occurrence of tinnitus, his conceded in-service noise exposure, the June 2010 Board hearing transcript, the November 2007 VA examination report, and the February 2011 letter from Mr. O.J.M regarding inservice noise exposure and ringing in the ears. 

The examiner should provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran's current tinnitus was incurred or aggravated as a result of active service. 

It is imperative that, in providing a rationale for any opinion rendered, the examiner discuss the Veteran's reported in-service occurrence of tinnitus. 

Note: The term "at least as likely as not" does not mean merely within the realm of medical possibility, but rather that the weight of medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of causation as it is to find against it.

If further examination of the Veteran is deemed necessary, arrange for the Veteran to undergo VA examination to obtain the above-noted opinion. Prior to the examination, the claims folder must be made available to the examiner for review of the case. A notation to the effect that this record review took place should be included in the report of the examiner.

All indicated tests and studies should be accomplished. All examination findings, along with the complete rationale for all opinions expressed, should be set forth in the examination report.

3. After all available records have been associated with the claims file, forward the claims file to the examiner that conducted the February 2011 VA respiratory examination, if available, for a supplemental medical opinion. The claims folder must be made available to the examiner for review of the case. A notation to the effect that this record review took place should be included in the report of the examiner.

The examiner should specifically acknowledge and discuss the statements from the Veteran regarding symptoms of snoring and breathing difficulty during sleep in the 1970s, the June 2010 Board hearing transcript, the November 2007 VA examination report, the July 2008 VA treatment record (discussed above) and the February 2011 letter from Mr. O.J.M, regarding the Veteran's snoring in service. (discussed above). 

The examiner should provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran's current sleep apnea was incurred or aggravated as a result of active service; or in the alternative, whether it is at least as likely as not (50 percent or greater probability) that the Veteran's current sleep apnea was caused or, alternatively, aggravated by service-connected PTSD and/or asthma. 

Note: The term "at least as likely as not" does not mean merely within the realm of medical possibility, but rather that the weight of medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of causation as it is to find against it.

Note: The term "aggravated" in the above context refers to a permanent worsening of the underlying condition, as contrasted to temporary or intermittent flare-ups of symptomatology which resolve and return to the baseline level of disability. 

If further examination of the Veteran is deemed necessary, arrange for the appellant to undergo VA examination to obtain the above-noted opinion. Prior to the examination, the claims folder must be made available to the physician for review of the case. A notation to the effect that this record review took place should be included in the report of the physician.

All indicated tests and studies should be accomplished. All examination findings, along with the complete rationale for all opinions expressed, should be set forth in the examination report.

4. After ensuring that the development is complete, re-adjudicate the claims, considering all evidence associated with the record since issuance of the April 2012 SSOC. If not fully granted, issue a supplemental statement of the case before returning the claims to the Board, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matters that the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).



_________________________________________________
S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2011).