http://www.va.gov/vetapp16/Files4/1630485.txt

Citation Nr: 1630485 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 09-08 456 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri

THE ISSUE

Entitlement to a total disability evaluation based on individual unemployability (TDIU) by reason of service-connected disabilities.

REPRESENTATION

Appellant represented by: Disabled American Veterans

ATTORNEY FOR THE BOARD

J. Smith, Counsel

INTRODUCTION

The Veteran served on active duty from April 1966 to April 1968 in the United States Marine Corps. He was awarded two Purple Heart Medals and the Vietnam Campaign Medal, among other decorations for his combat service in the Republic of Vietnam.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. 

The July 2008 rating decision pertained to a claim for a higher rating for posttraumatic stress disorder (PTSD). However, the claim for a TDIU was incorporated into the appeal by the Board in the most recent adjudication of July 2013 pursuant to Rice, v. Shinseki, 22 Vet. App. 447 (2009), and remanded for further development. Prior adjudications by the Board and the United States Court of Appeals for Veterans Claims (Court) in 2012 pertained to the claim for a higher rating for PTSD, which was decided by the Board in the July 2013 decision.

FINDING OF FACT

The Veteran's service-connected disabilities do not render him unable to secure or follow substantially gainful employment. 

CONCLUSION OF LAW

The criteria for entitlement to a TDIU have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.15, 4.16, 4.19 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

VA will grant a TDIU when the evidence shows that the Veteran is precluded, by reason of his service connected disabilities, from obtaining or maintaining "substantially gainful employment" consistent with his education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16; VAOPGCPREC 75-91; 57 Fed. Reg. 2317 (1992). 

A threshold requirement for eligibility for a TDIU under 38 C.F.R. § 4.16(a) is that if there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, and sufficient additional disability must bring the combined rating to 70 percent or more. 

As described above, the Veteran's claim for a TDIU stems from his March 2008 claim for a higher rating for PTSD. His service-connected disabilities consist of PTSD (70 percent disabling), a gunshot wound involving muscle groups XVII and XVI (20 percent disabling), gunshot wound scars (noncompensable), and a gunshot wound involving muscle group XV (noncompensable). He has been in receipt of a combined disability rating of 80 percent since March 25, 2007. See, e.g. August 2013 Rating Codesheet. Thus, the combined schedular rating criteria for consideration of TDIU under 38 C.F.R. § 4.16(a) have been met throughout the entire appeal period. 

Consequently, the Board must determine whether the Veteran's service-connected disabilities have precluded him from engaging in substantially gainful employment (work that is more than marginal, which permits the individual to earn a "living wage.") Moore v. Derwinski, 1 Vet. App. 356 (1991).

In so doing, the Global Assessment of Functioning (GAF) scores assigned by medical providers will be discussed. See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV) at 44-47. A GAF score is probative as it relates directly to the veteran's level of impairment of social and industrial adaptability. See Massey v. Brown, 7 Vet. App. 204, 207 (1994). A GAF score of 41-50 contemplates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF score of 51-60 contemplates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers). A GAF score of 61-70 contemplates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

The record shows that the Veteran is a high school graduate with two years of college education. He worked for the United States Postal Service for approximately 30 years and retired in 2003. During his time with the Postal Service, he also had a second job with a trucking company for about 15 years. While working the two jobs together, he worked about 16 hours per day. He stopped working for the trucking company after injuring his shoulder. See, e.g., April 2013 VA examination report. 

May 2006 records from the Social Security Administration (SSA) show that the Veteran receives disability benefits for disorders of the bone and cartilage (primary diagnosis), and a psychiatric disability (secondary diagnosis). With regard to the psychiatric disability, SSA findings include that the Veteran's "symptoms are credible however they do not impact his ability to perform work functions. Non-severe impairment." 

On VA psychiatric examination in May 2008, the Veteran was neatly groomed and appropriately dressed. He was cooperative with the interview and answered questions completely and thoughtfully. His mood was described as mildly anxious, as he was observed to fidget. He was alert and oriented to person, place, and date. No fine or gross motor impairments were observed. The Veteran walked unaided. His thought processes were clear and goal directed, and there was no evidence of perceptual disturbances. The examiner indicated that speech was articulate and clear and within normal limits for volume, rate, and rhythm. Immediate memory task was performed without error and the Veteran was able to recall two of three items correctly on intermediate and delayed memory task, recalling the third item as pen rather than penny. Tests of mental control were good, as was attention and concentration. Impulse control appeared to be within normal limits. Verbal abstract reasoning skills were described as fair. Judgment and insight were described as intact. The Veteran is able to complete activities of daily living congruent with his age cohort and appears to be able to manage Veterans Administration benefits. He was assigned a GAF score of 63. As for his occupational impairment specifically, the examiner opined, "historically these symptoms do not appear to have caused any difficulties for the veteran in his occupational functioning as he successfully worked at one job for 30 years and another job for 15."

On VA muscles examination in May 2008, the examiner did not render any opinion on the impact of the Veteran's service-connected gunshot wound residuals on his ability to work.

On VA psychiatric examination in April 2013, the Veteran's PTSD symptoms included of intense fear, helplessness, anxiety, tearfulness, recurrent and distressing recollections of events including images, thoughts and perceptions, distressing dreams of the traumatic events of service, flashbacks; disruptive re-experiencing; persistent avoidance of stimuli, avoidance behavior, feelings of severe detachment or estrangement from others to most people, social isolation, sense of a foreshortened future, difficulty falling or staying asleep, and irritability and anger outbursts that affected his relationship with his wife. The Veteran denied experiencing any difficulty with concentration or persistent symptoms of increased arousal, and described only mild to minimal startle reaction. He noted that when he experienced flashbacks he had at times lost an awareness of his surroundings, and often had difficulty differentiating whether he had a bad dream or a flashback. The examiner opined that the PTSD caused occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, and thinking and/or mood. The examiner assigned a GAF score of 50 based on his social impairment, explaining, "the significant impairment in social functioning caused by his PTSD justif[ies] a GAF score of 50." On the matter of occupational impairment, the examiner stated that his retirement had actually worsened his symptoms, stating, "paradoxically it appears the work environment and schedule (16 hours per day, 5 days a week for about 15 years) provided him with an avenue to distract himself from his traumatic experiences."

In the July 2013 Board decision, the Board summarized the Veteran's psychiatric treatment records from 2008 to 2012. During this time, his symptoms generally included recurrent and intrusive recollections of trauma, dissociative flashbacks of traumatic events, hyper-arousal, sleep disturbance, nightmares, anxious mood, restricted affect, guilt, increased irritability and agitation, isolation behavior and estranged relationships with a number of friends and family members. He denied experiencing hallucinations, delusions, suicidal ideation and homicidal ideation, and his concentration was consistently characterized as "good." However, he described episodes of feeling terrorized by Medevac helicopters flying near his home, which caused him to feel panic and flee inside his home to the basement for comfort. The Veteran was consistently found to be alert and oriented, and GAF scores assigned ranged from 55 to 65

On separate VA examinations in August 2015 for gunshot wound residuals, the examiner found the service-connected disabilities caused no impact on employment.

On VA psychiatric examination in October 2015, the examiner opined that the PTSD caused occupational and social impairment with an occasional decrease in work efficiency and intermittent periods of an inability to perform occupational tasks, although generally functioning satisfactorily with routine behavior, self-care, and conversation normal. His symptoms included anxiety, panic attacks, sleep impairment, and mild memory loss. He was competent to manage his VA affairs. 

In a January 2016 addendum opinion by a different examiner, the claims file was reviewed. The examiner stated the Veteran could perform activities of daily living and drive a vehicle, although this choice appeared dysfunctional given that he easily got lost. There were no psychotic processes or suicidal or homicidal ideation. The examiner stated that from 2006 to 2013 there were no driving issues or significant memory loss, but his mental functioning appeared less than adequate for even sedentary employment. His attendance and persistence at work tasks would have suffered after 2007 related to his PTSD symptoms which increased in severity after his 2003 retirement. His PTSD would not have limited his ability to perform physical tasks. After 2014, he would not have been able to drive alone to work. 

The preponderance of the evidence is against the assignment of a TDIU. Prior to the January 2016 VA addendum report, there is no indication that the Veteran was unable to secure or follow a substantially gainful occupation due to his service-connected disabilities. To the contrary, the SSA determined that the psychiatric disability did not impact his ability to perform work functions. The May 2008 VA examiner found no effect of the Veteran's PTSD on occupation. The April 2013 VA examiner's assignment of a GAF score of 50 was due to social impairment, and the examiner stated that stopping work had actually worsened his symptoms. VA examiners in August 2015 for gunshot wound residuals found no effect on employment. The October 2015 VA psychiatric examiner opined that the PTSD caused only "an occasional decrease in work efficiency and intermittent periods of an inability to perform occupational tasks." As the opinions contain an explanation of the reasons for the conclusions based on an accurate review of the pertinent evidence, including an accounting of which activities would be restricted and which would not, they are entitled to significant probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning). Additionally, the GAF scores obtained throughout the appeal, aside from the April 2013 score of 50 (based on social, not occupational, impairment), indicate mild to moderate impairment. 

The Board has considered the January 2016 VA examiner's opinion which supports the claim due to her assessment that from 2006 to 2013, the Veteran's mental functioning appeared less than adequate for even sedentary employment. However, this is an isolated finding and is inconsistent with the record as a whole, including the multiple in-person VA psychiatric examinations conducted, and the multiple treatment notes taken over the years. In particular contrast is the October 2015 VA examination, conducted only a few months prior, in which that examiner found the Veteran's PTSD caused only an occasional decrease in work efficiency. The January 2016 examiner's findings are also in contrast to the May 2008 VA psychiatric examiner's determination that his PTSD did not cause any difficulties in occupational functioning. As the January 2016 examiner's findings are unsupported by a rationale that addresses the discrepancy with the rest of the record, the opinion is of low probative value. Nieves-Rodriguez, 22 Vet. App. at 304. 

The only other evidence to the contrary of the VA examination reports is the competent and credible lay evidence. However, the VA examiners were medical professionals who reviewed the claims file and considered the reported history including the Veteran's own lay assertions. The examiners, in providing the requested medical opinions, used their expertise in reviewing the facts of this case and determined that the Veteran's service-connected disabilities did not render him unable to secure or follow a substantially gainful occupation. As the examiners reached the conclusions based on an accurate characterization of the evidence, including the Veteran's lay statements, the opinions are entitled to substantial probative weight. See Nieves-Rodriguez, 22 Vet. App. at 304 (2008). In weighing the VA examiner's opinions against those of the Veteran, the Board finds that the credibility and probative value of the specific and reasoned statement of the trained medical professional outweighs that of the general lay assertions.

The above evidence reflects that the weight of the evidence is against a TDIU as it indicates that the Veteran's service- connected disabilities do not produce unemployability. The benefit-of-the-doubt doctrine is therefore not for application, and the claim must be denied. 

Notice and Assistance

VA has satisfied its duties under The Veteran's Claims Assistance Act of 2000 (VCAA) to notify and assist. VA's duty to notify was satisfied by an August 2015 letter. 

VA's duty to assist under the VCAA includes helping claimants to obtain STRs and other pertinent records, including private medical records (PMRs). The claims file contains the Veteran's STRs, VA medical records (VAMRs), PMRs, and records from the SSA. The duty to obtain relevant records is therefore satisfied. 
VA's duty to assist also includes providing a medical examination and/or obtaining a medical opinion when necessary to make a decision on the claim, as defined by law. Appropriate VA medical inquiries have been accomplished and are factually informed, medically competent and responsive to the issues under consideration. 

The Board is satisfied that the RO substantially complied with its July2013 remand directives. Stegall v. West, 11 Vet. App. 268, 271 (1998); see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (finding that only substantial compliance, rather than strict compliance, with the terms of a Board engagement letter requesting a medical opinion is required). As directed by the Board, the AOJ provided notice to the Veteran, provided him with VA Form 21-8940, which he completed, and obtained medical opinions.

A single opinion on the combined effects of all of the Veteran's service connected disabilities was not obtained. However, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that VA's duty to assist does not require obtaining a single medical opinion regarding the combined impact of all service-connected disabilities in a claim for TDIU. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013). The ultimate question of whether a Veteran is capable of substantially gainful employment is not a medical one, it is a determination for the adjudicator. Id. The need for a combined-effects medical examination report or opinion in a TDIU case is to be determined on a case-by-case basis, and here, the record is sufficient for deciding the claim without remand. Floore v. Shinseki, 26 Vet. App. 376, 381 (2013). 

In sum, the Veteran has been afforded a meaningful opportunity to participate in the development of his appeal. He has not identified any outstanding evidence which could support his claim, and there is no evidence of any VA error in notifying or assisting the Veteran that could result in prejudice to him or that could otherwise affect the essential fairness of the adjudication. 

ORDER

Entitlement to a TDIU is denied.

____________________________________________
M. TENNER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs