﻿Citation Nr: AXXXXXXXX
Decision Date: 01/29/21 Archive Date: 01/29/21

DOCKET NO. 200206-60255
DATE: January 29, 2021

ORDER

Entitlement to an initial rating in excess of 10 percent for onychomycosis of the great toes is denied.

FINDING OF FACT

The Veteran’s service-connected onychomycosis of the great toes is manifested by no more than characteristic lesions involving at least 5 percent, but less than 20 percent, of the entire body.

CONCLUSION OF LAW

The criteria for entitlement to an initial rating in excess of 10 percent for onychomycosis of the great toes have not been met. 38 U.S.C. § 1155; 38 C.F.R. § 4.118, Diagnostic Code 7813.

REASONS AND BASES FOR FINDING AND CONCLUSION

The appellant is a Veteran who served on active duty from March 1983 to March 1987. 

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a December 2019 rating decision by the Indianapolis, Indiana, Regional Office (RO) of the Department of Veterans Affairs (VA). 

The rating decision on appeal constitutes an initial decision; therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies.

In February 2020, the Veteran submitted his Decision Review Request (Board Appeal), selecting direct review by a Veterans Law Judge. Because the Veteran requested direct review by the Board without submission of additional evidence and without a Board hearing, the Board’s decision is based on a review of the evidence of record at the time of the February 2020 rating decision. See 38 C.F.R. § 20.301.

Increased Rating

Disability evaluations are determined by the application of VA’s Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. This Rating Schedule is primarily a guide in the rating of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. For the application of this schedule, accurate and fully descriptive medical examinations are required, with emphasis upon the limitation of activity imposed by the disabling condition. Over a period of many years, a veteran’s disability claim may require re-ratings in accordance with changes in laws, medical knowledge and his or her physical or mental condition. It is essential, both in the examination and in the evaluation of disability, that each disability be viewed in relation to its history. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

It is the responsibility of the rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2. Consideration of factors wholly outside the rating criteria constitutes error as a matter of law. Massey v. Brown, 7 Vet. App. 204, 207-08 (1994). 

The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

VA amended the criteria for rating skin disabilities effective from August 13, 2018. These new regulations apply to all applications for benefits received by VA or that are pending before the agency of original jurisdiction on or after August 13, 2018. Claims pending prior to the effective date will be considered under both old and new rating criteria, and whatever criteria is more favorable to the veteran will be applied. The Board may not apply a current regulation prior to its effective date, unless the regulation explicitly provides otherwise. Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003). However, the Board is not precluded from applying prior versions of the applicable regulation to the period on or after the effective dates of the new regulation if the prior version was in effect during the pendency of the appeal.

Prior to August 13, 2018, Diagnostic Code 7813 (including tinea unguium or onychomycosis) provided that such disorder were to be rated as disfigurement of the, face, or neck (DC 7800) or scars (DC’s 7801, 7802, 7803, 7804, or 7805), or dermatitis (7806) depending on the predominant disability. 38 C.F.R. § 4.118, Diagnostic Code 7813. Under Diagnostic Code 7806, a noncompensable rating is assigned for less than 5 percent of the entire body or less than 5 percent of exposed areas affected, and; no more than topical therapy required during the past 12 months. A 10 percent rating is assigned for at least 5 percent, but less than 20 percent, of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas affected, or; intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of less than six weeks during the past 12-month period. A 30 percent rating is assigned for 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly during the past 12-month period. A 60 percent rating is assigned for more than 40 percent of the entire body or more than 40 percent of exposed areas affected, or; constant or near- constant systemic therapy such as corticosteroids or other immunosuppressive drugs required during the past 12-month period. Or rate as disfigurement of the head, face, or neck (DC 7800) or scars (DC’s 7801, 7802, 7803, 7804, or 7805), depending on the predominant disability. 38 C.F.R. § 4.118, Diagnostic Code 7813.

Effective August 31, 2018, the revised regulations provide that (a) systemic therapy is treatment that is administered through any route (orally, injection, suppository, intranasally) other than the skin, and topical therapy is treatment that is administered through the skin and (b) two of more skin conditions may be combined only if separate areas of the skin are involved and when two or more skin conditions involve the same area of the skin, then only the highest evaluation shall be used. A revised General Rating Formula for the Skin applies to Diagnostic Codes 7806, 7809, 7813 to 7816, 7820 to 7822, and 7824. See 38 C.F.R. § 4.118. Under this formula, a noncompensable rating is assigned for no more than topical therapy required over the past 12-month period and at least one of the following: (1) characteristic lesions involving less than 5 percent of the entire body affected; or (2) characteristic lesions involving less than 5 percent of exposed areas affected. A 10 percent rating is assigned for at least one of the following: (1) characteristic lesions involving at least 5 percent, but less than 20 percent, of the entire body affected; or (2) at least 5 percent, but less than 20 percent, of exposed areas affected; or (3) intermittent systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, psoralen with long-wave ultraviolet-A light (PUVA), or other immunosuppressive drugs required for a total duration of less than 6 weeks over the past 12-month period. A 30 percent rating is assigned at least one of the following: (1) characteristic lesions involving more than 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected; or (2) systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs required for a total duration of 6 weeks or more, but not constantly, over the past 12-month period. A 60 percent rating is assigned for at least one of the following: (1) characteristic lesions involving more than 40 percent of the entire body or more than 40 percent of exposed areas affected; or (2) constant or near-constant systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs required over the past 12-month period. Or rate as disfigurement of the head, face, or neck (DC 7800) or scars (DC’s 7801, 7802, 7803, 7804, or 7805), depending on the predominant disability. 38 C.F.R. § 4.118, General Rating for the Skin for DCs 7806, 7809, 7813-7816, 7820-7822, and 7824.

It is the policy of VA to administer the law under a broad interpretation, consistent with the facts in each case with all reasonable doubt to be resolved in favor of the claimant. However, the reasonable doubt rule is not a means for reconciling actual conflict or a contradiction in the evidence. 38 C.F.R. § 4.3.

1. Entitlement to an initial rating in excess of 10 percent for onychomycosis of the great toes.

The Veteran contends, in essence, that his service-connected onychomycosis of the great toes is more severe than reflected by the presently assigned rating. He has asserted that a 10 percent rating should be assigned for each toe. His original service connection claim was received by VA on August 23, 2012, and service connection has been established from that date. 

Private treatment records include a November 2011 report noting the Veteran had thickened and painful right hallux nail problems since 1985. The diagnoses included onychomycosis.

VA foot examination in October 2012 included a diagnosis of onychomycosis of the bilateral great toenails. The total body area involved was less than 5 percent and there was no involvement to exposed areas. 

VA skin examination in October 2019 included a diagnosis of onychomycosis. The examiner noted that the total body area involved was less than 5 percent and there was no involvement to exposed areas. 

Treatment records show the right great toenail was removed in May 2014. A followup treatment visit showed no complaints of distress, and the level of discomfort was significantly better than before surgery.

Based upon the evidence of record, the Board finds that Veteran’s service-connected onychomycosis of the great toes is manifested by no more than characteristic lesions involving at least 5 percent, but less than 20 percent, of the entire body. The overall evidence, including the October 2012 and October 2019 VA examination findings, is persuasive as to the extent of the Veteran’s onychomycosis involvement. There is no difference in either version of the regulations applicable in this case. Although the Veteran contends that separate ratings are warranted for his service-connected skin disorder of the great toes, the Board finds no legal merit to the claim. Nor may any toe symptoms unrelated to the service-connected skin disability be considered for any higher or separate ratings under other diagnostic codes. While the revised regulations clarified that separate ratings may be combined for skin conditions involving separate areas, the assignment of separate ratings for the same skin condition to separate areas is inconsistent with the application of the rating criteria for involvement of the entire body affected or the exposed area affected. Therefore, a rating in excess of 10 percent must be denied. 

The Board has considered whether a separate evaluation is warranted for a scar of the right great toenail. However, the October 2019 VA examination reported no such scar and no pain or instability of skin covering was identified. Furthermore, there is no evidence, either treatment records or lay evidence, showing a scar is present that is painful or unstable or that conforms to other criteria for a compensable evaluation for scars. Therefore, a separate compensable evaluation for the right great toe under a Diagnostic Code for scars is not warranted.

The Board acknowledges that the Veteran is competent to report observable symptoms. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). However, he is not competent to identify a specific level of disability. Competent evidence concerning the nature and extent of the Veteran’s service-connected disability, however, has been provided by VA medical professionals who have examined him. The October 2012 and October 2019 VA findings directly address the criteria under which the disability is evaluated, including whether a specific symptom caused a level of impairment required for a higher disability rating. The Board accords these medical findings greater weight than any subjective complaints of increased symptomatology. See Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991). 

The Board notes, to the extent the disorder has been manifested by any flare-ups, that for VA compensation purposes flare-ups must be quantifiable and must result in limitation of function beyond that contemplated by the already provided evaluation. In addition, because VA regulations under 38 C.F.R. § 3.344(a) and 38 C.F.R. § 4.1 address the stabilization of ratings, flare-ups must be of such length as to establish that the overall impairment is more severe than currently evaluated, rather than a brief snapshot in time. With that in mind, consideration has been given to the evidence of record and the Board finds any such flare-ups are not shown to additionally limit function in a quantifiable way and are not of such length or duration that a staged rating would not violate the rule regarding stabilization of ratings. 

(Continued on the next page)

 

In sum, the Board finds the degrees of disability specified are considered adequate to compensate for loss of working time from exacerbations or illness proportionate to the severity of the several grades of disability. Here, the reports of exacerbation or flare-ups are not quantifiable nor of sufficient duration to warrant a change in evaluation without violating the provisions of 38 C.F.R. § 4.1 and 38 C.F.R. § 3.344(a) regarding stabilization of ratings. 

When all the evidence is assembled VA is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim in which case the claim is denied. Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001). The preponderance of the evidence in this case is against the claim.

 

 

A. Rocktashel

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T. Douglas

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.