Citation Nr: 1443643 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 10-19 598 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUE

1. Entitlement to an increased rating for left shoulder separation with traumatic arthritis, currently evaluated as 30 percent disabling. 

2. Entitlement to an extraschedular consideration for left shoulder separation with traumatic arthritis. 

3. Entitlement to total disability rating due to individual unemployability (TDIU). 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant
ATTORNEY FOR THE BOARD

Kimberly A. Mitchell, Associate Counsel


INTRODUCTION

The Veteran served on active duty from April 1976 to March 1979. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2009 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, Puerto Rico. 

In March 2013, the Veteran had a Central Office hearing and a transcript of that hearing is of record. The Veteran's law judge who presided over the hearing is no longer at the Board. A clarification letter was sent to the Veteran on August 15, 2014, asking the Veteran to state whether or not he wanted another hearing, to which there was no response. 

In October 2013, the Board remanded the issue for a VA examination and outstanding VA treatment records. The appeal has been returned to the Board for further adjudication. 

The issue of extraschedular consideration and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ. 


FINDINGS OF FACT

1. For the entire rating period on appeal, and having considered the impact of functional limitations such as pain, the Veteran's service-connected left shoulder disability was shown to have restricted the range of motion of the shoulder to 25 degrees from the side. 

2. The left shoulder disability has not been shown to cause fibrous union of the arm, nonunion (false flail joint), flail shoulder, or ankylosis of the left shoulder. 


CONCLUSION OF LAW

For the entire rating period, the criteria for a disability rating in excess of 30 percent for recurrent dislocation of the left shoulder, postoperative, with degenerative arthritis have not been met or approximated. 38 U.S.C.A. §§ 1155 , 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159 , 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5200-5203 (2013). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Upon receipt of a substantially complete application, VA must notify the claimant and any representative of any information, medical evidence, or lay evidence not previously provided to VA that is necessary to substantiate the claim. The notice must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. § 3.159 (2013); Pelegrini v. Principi, 18 Vet. App. 112 (2004). The Veteran was provided adequate notice in a letter dated March 2009. Further, the Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of the notice provided. Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (burden of showing that an error is harmful or prejudicial falls on party attacking agency decision). Thus, VA has satisfied its duty to notify the Veteran and had satisfied that duty prior to the initial adjudication. 

The Board also finds that the duty to assist requirements have been fulfilled. All relevant, identified, and available evidence has been obtained, and VA has notified the Veteran of any evidence that could not be obtained. The Veteran has not referred to any additional, unobtained, relevant, available evidence. VA has obtained examinations with respect to the claim in January 2010, January 2012, and December 2013, and the Board finds these examinations to be adequate for rating purposes as the examiners reviewed the file and addressed the Veteran's symptoms. Thus, the Board finds that VA has satisfied the duty to assist provisions of law. No further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in development. Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

Increased Ratings

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.1 (2013).

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). However, where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision, therefore, is undertaken with consideration of the possibility that different ratings may be warranted for different time periods. 

It is the responsibility of the rating specialist to interpret reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2. Consideration of factors wholly outside the rating criteria constitutes error as a matter of law. Massey v. Brown, 7 Vet. App. 204, 207-08 (1994). Evaluation of disabilities based upon manifestations not resulting from service-connected disease or injury and the pyramiding of ratings for the same disability under various diagnoses are prohibited. 38 C.F.R. § 4.14. 

When there is a question as to which of two evaluations to apply, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating, otherwise the lower rating shall be assigned. 38 C.F.R. § 4.7. 

It is the policy of VA to administer the law under a broad interpretation, consistent with the facts in each case with all reasonable doubt to be resolved in favor of the claimant; however, the reasonable doubt rule is not a means for reconciling actual conflict or a contradiction in the evidence. 38 C.F.R. § 4.3. 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervations, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.10, 4.40, 4.45. 

VA must analyze the evidence of pain, weakened movement, excess fatigability, or incoordination and determine the level of associated functional loss in light of 38 C.F.R. § 4.40, which requires VA to regard as "seriously disabled" any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions of 38 C.F.R. § 4.14 (avoidance of pyramiding) do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including during flare-ups. The guidance provided under DeLuca must be followed in adjudicating claims where a rating under the diagnostic code provisions governing limitation of motion should be considered. 

Initially, the Board notes that the Veteran has been determined to be right hand dominant, thus, his left arm is considered his minor arm for rating purposes. See VA examination, December 5, 2013. Currently, the Veteran is in receipt of a 30 percent rating for his service-connected left shoulder disability under the provisions of 38 C.F.R. § 4.71a, DC 5201, which governs evaluations for limitation of motion of the shoulder and arm. Under this provision, a 30 percent evaluation is the highest evaluation available for limitation of motion of the minor arm. 

Higher ratings are available under Diagnostic Code 5200 and Diagnostic Code 5202. Under DC 5200, governing scapulohumeral articulation, a 40 percent rating is available for unfavorable ankylosis with abduction limited to 25 degrees from the side. Under DC 5202, governing impairment of the humerus in the minor arm, a 40 percent rating is warranted for fibrous union of humerus, and a 50 percent rating is granted for nonunion (false flail joint) of the humerus; a 70 percent rating is granted for loss of head of (flail shoulder) of the humerus. 

Plate I under 38 C.F.R. § 4.71a reveals that shoulder level is equivalent to 90 degrees of shoulder forward flexion or abduction. 

After filing his claim, in November 2009 the Veteran underwent a left shoulder arthroplasty. In January 2010 the Veteran was afforded a VA examination. Examination of the left shoulder revealed tenderness at the left subachromial area. There was no swelling or effusion. The Veteran was asked to repeatedly flex the left shoulder without resistance but was unable to do so due to pain. There was no ankylosis present. Forward flexion was to 20 degrees, abduction to 10 degrees, and external and internal rotation was 0 degrees, all with evidence of pain. 

At a January 2012 VA examination the Veteran reported pain, stiffness, weakness, limited range of motion, and locking. Forward flexion was to 30 degrees, abduction to 20 degrees, and external and internal rotation was 0 degrees. There were no additional limitations with repetition. The Veteran reported that he retired in 1989 as a correctional officer due to his shoulder. The examiner noted occupational impacts of decreased mobility, problems lifting and carrying, and difficulty reaching. 

In March 2013, the Veteran testified that he had very limited motion due to his left shoulder disability. He also said he was unemployable due to his neck, which he is not currently service-connected for, and his left shoulder. He also reported that he received social security for his neck disability. 

A December 2013 VA examination revealed the Veteran complained of persistent pain, stiffness, and the inability to reach out or perform overhead activities with the left arm. He also reported increased pain with cold weather and sleep disturbance due to pain. The Veteran did not report flare-ups. Physical examination revealed forward flexion to 15 degrees, abduction to 25 degrees, and evidence of painful motion began at 10 degrees. Repetitive motion testing resulted in additional loss of abduction to 10 degrees. The Veteran had additional limitation and functional loss in ROM following repetitive use testing. Functional loss consisted of less movement than normal, weakened movement, pain on movement, and atrophy of disuse. The Veteran also had pain on palpation and guarding. No ankylosis was present. His muscle strength was 2/5 for both abduction and forward flexion. The Veteran did not report a history of recurrent dislocation or mechanical symptoms such as clicking or catching. Imaging studies of the left shoulder showed traumatic arthritis which impacts the Veteran's ability to work due to pain and loss of motion. 

As noted above, the Veteran is receiving the highest rating available for his left shoulder disability under the limitation of motion provisions governing the evaluation of the minor shoulder. A higher rating is only available for unfavorable ankylosis of the shoulder. The provisions of 38 C.F.R. §§ 4.40, 4.45, and 4.59 are not for consideration where the Veteran is in receipt of the highest rating based on limitation of motion and a higher rating requires ankylosis. Johnston v. Brown, 10 Vet. App. 80, 84-5 (1997). Thus, no additional compensation can be awarded for functional loss under these provisions.

The Veteran does not have ankylosis of the shoulder joint, thus a rating under DC 5200 governing ankylosis is not warranted. As to DC 5202, as noted above, there has been no demonstration of fibrous union, nonunion (false flail joint), or loss of the head of the humerus (flail shoulder). As such, an evaluation in excess of 30 percent would not be warranted under this provision. 

For these reasons, the Board finds the schedular criteria for a rating in excess of 30 percent for left shoulder disability have not been met or more nearly approximated for any distinct period of the increased rating claim. Because the weight of the evidence shows that the Veteran's service-connected left shoulder disability manifested limitation of motion of the left arm 25 degrees from the side; and did not manifest fibrous union, nonunion, or ankylosis of the left shoulder at any time during the increased rating period, an increased rating in excess of 30 percent is not warranted for any period. 38 C.F.R. § 4.71a, DCs 5200-5203. For these reasons, the Board finds that the weight of the evidence is against a finding of an increased rating in excess of 30 percent for left shoulder disability. To the extent any higher level of compensation is sought, the preponderance of the evidence is against this claim, and hence the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 4.3, 4.7. 


ORDER

A schedular evaluation in excess of 30 percent for a left shoulder separation with traumatic arthritis is denied. 


REMAND

In exceptional cases where the rating is inadequate, it may be appropriate to assign an extraschedular rating. 38 C.F.R. § 3.321(b)(1). The Veteran is receiving the highest schedular evaluation allowed by law for limitation of motion of the shoulder. A higher evaluation of 40 percent is not warranted for ankylosis of the shoulder unless there is unfavorable ankylosis, abduction limited to 25 degrees from the side. The Veteran does not have ankylosis, which is required under the rating schedule for the next higher evaluation. However, on repetitive motion testing the Veteran has additional limitation in ROM as well as functional loss. The functional loss consists of less movement than normal, weakened movement, pain on movement, and atrophy of disuse. Based on the additional limitation of motion and functional loss, the Board finds that the schedular evaluations are inadequate and referral to the Director of Compensation Service is warranted. 

According to the June 2014 Supplemental Statement of the Case, the Appeals Management Center informed the Veteran that this issue was being referred to the Director of Compensation Service for a possible extraschedular evaluation. There is no evidence in the record that the issue has been referred to the Director of Compensation Service. Of record is a January 31, 2014, finding by the AMC that entitlement to an extraschedular evaluation is not warranted. Since the Director of Compensation Service or the Under Secretary for Benefits and not the AMC makes that determination, the issue should be referred to the Director of Compensation Service or the Under Secretary for Benefits. 

The Veteran has contended that his service-connected disability contributed to his inability to work. Thus, the matter of entitlement to TDIU has been raised. A remand is necessary however, in order to afford the Veteran a VA vocational examination so as to ascertain whether his service-connected disabilities render him unemployable. 

Accordingly, the case is REMANDED for the following action: 

1. The RO should refer the appellant's case to the Director of Compensation Service for a ruling on entitlement to an increased rating for left shoulder separation on an extraschedular basis. 38 C.F.R. § 3.321(b)(1) (2013). The response from the Director of Compensation Service should be associated with the Veteran's file.

2. Send the Veteran and his representative a letter addressing VA's duty to notify with respect to his TDIU claim, to include a VA Form 21-8940. The letter must give the Veteran the opportunity to address how his service-connected disabilities impact his ability to work. 
 
3. After the above has been completed, schedule the Veteran for an examination with a vocational specialist to determine the impact of his service-connected disabilities on his ability to secure or follow a substantially gainful occupation. The claims file must be reviewed by the examiner. All necessary tests should be conducted and all findings should be reported in detail.

The examiner must opine as to whether, without regard to the Veteran's age or the impact of any nonservice-connected disabilities, it is at least as likely as not that his service-connected disabilities alone render him unable to secure or follow a substantially gainful occupation. The examiner must take into consideration the Veteran's level of education, training, and previous work experience. The examiner should describe what type of employment activities would be limited due to his service-connected disabilities.

4. After completing any other development deemed necessary, readjudicate the issues on appeal. If the benefits sought remain denied, issue a Supplemental Statement of the Case to the Veteran and his representative. An appropriate amount of time should be provided for a response. Thereafter, the case should be returned to the Board for review. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013). 




______________________________________________
GAYLE E. STROMMEN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs