Citation Nr: 1452653 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 08-25 678 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUES

1. Entitlement to service connection for an acquired psychiatric disorder, to include major depression. 

2. Entitlement to a rating in excess of 10 percent for left knee arthralgia.

3. Entitlement to a rating in excess of 10 percent for left great toe hallux valgus. 

4. Entitlement to a total disability rating due to individual employability resulting from service-connected disability (TDIU).


REPRESENTATION

Appellant represented by: Robert Chisolm, Attorney




ATTORNEY FOR THE BOARD

M. Riley, Counsel 


INTRODUCTION

The Veteran served on active duty from October 1992 to September 1996. This case comes before the Board of Veterans' Appeals (Board) on appeal from a January 2008 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in San Diego, California, and April 2009 and June 2011 rating decisions from the RO in Oakland, California. 

In December 2011, the Board denied the claims to reopen entitlement to service connection for an acquired psychiatric disorder and entitlement to TDIU. The Veteran appealed the Board's decision to the Court of Appeals for Veterans Claims (Court). The Court issued a March 2013 memorandum decision reversing the Board's denial of the claim to reopen service connection and vacating the denial of TDIU. The appeal was remanded back to the Board, and in January 2014, the Board issued a new decision reopening the service connection claim. The reopened claim and the claim for TDIU were then remanded for additional development. The claims have now returned to the Board where they are joined by the claims for entitlement to increased ratings for left knee and left foot disabilities. 

In his August 2009 substantive appeal, the Veteran requested to testify before the Board at its Central Office in Washington, D.C. The hearing was scheduled for February 24, 2011 and the Veteran was notified of the time and place of the hearing in a November 2010 letter. He responded with November 2010 and January 2011 statements cancelling the hearing and withdrawing the hearing request. The Board will therefore proceed with the case. 



The issues of entitlement to service connection for an acquired psychiatric disorder and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's hallux valgus of the left foot is manifested by symptoms such as pain and a moderate calcaneal plantar spur that most nearly approximates severe toe impairment and moderate residuals of a foot injury. 

2. The Veteran's left knee arthralgia does not most nearly approximate flexion limited to 30 degrees, extension limited to 15 degrees, and does not manifest subluxation or instability, ankylosis, impairment of the tibia or fibula, or frequent episodes of locking, dislocation, and joint pain.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for left hallux valgus are not met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.10, 4.31, 4.71a, Diagnostic Codes 5280, 5284 (2014).

2. The criteria for a rating in excess of 10 percent for left knee arthralgia are not met. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.10, 4.40, 4.45, 4.71a, Diagnostic Codes 5256-5262.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Increased Rating Claims

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The Veteran's entire history is reviewed when making disability ratings. See generally 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Although a rating specialist is directed to review the recorded history of a disability in order to make a more accurate evaluation, see 38 C.F.R. § 4.2, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55 (1994). Staged ratings are, however, appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. The relevant focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Hart v. Mansfield, 21 Vet. App. 505 (2007).


Left Knee Arthralgia

Service connection for left knee arthralgia was granted in an August 1997 rating decision with an initial noncompensable evaluation assigned effective October 1, 1996. The current 10 percent rating was awarded in a November 2000 supplemental statement of the case (SSOC) also effective October 1, 1996. The Veteran contends that an increased rating is warranted as he experiences left knee pain and swelling. 



The Veteran's left knee arthralgia is currently rated as 10 percent disabling under Diagnostic Code 5257 pertaining to recurrent subluxation or lateral instability. This diagnostic code provides for a 10 percent rating for slight instability, a 20 percent rating for moderate instability, and a maximum 30 percent rating for severe instability. 38 C.F.R. § 4.71a, Diagnostic Code 5257. Ratings in excess of 10 percent are also possible based on the other criteria for rating the knee. A 20 percent evaluation is warranted for flexion of the knee limited to 30 degrees under Diagnostic Code 5260 and a 20 percent evaluation is warranted for extension of the knee limited to 15 degrees under Diagnostic Code 5261. Diagnostic Codes 5256, 5258, and 5262 also provide for ratings higher than 10 percent with a showing of ankylosis, dislocated semilunar cartilage with frequent episodes of "locking," pain, and effusion into the joint, and impairment of tibia or fibula. 

Aside from a July 2011 statement from the Veteran complaining of left knee pain requiring a knee brace and swelling of the joint, the record contains no lay or medical evidence describing the severity of the service-connected knee condition. The Veteran has not sought VA or private treatment for the disability and has not provided any other statements reporting symptomatology associated with the left knee. Although VA attempted to examine the Veteran in March 2011 and June 2014 to determine the current severity of his left arthralgia, the Veteran failed to appear for the first examination and did not respond to a request to schedule the 2014 examination. The Board finds that the vague and generalized description of symptoms provided by the Veteran in July 2011 is not adequate to conclude that his left knee arthralgia most nearly approximates any of the specific criteria associated with a rating in excess of 10 percent under 38 C.F.R. § 4.71a. The Veteran reported requiring a knee brace, implying that his knee manifested some kind of instability, but the current 10 percent evaluation under Diagnostic Code 5257 contemplates slight subluxation or instability. The Board therefore concludes that the service-connected left knee disability does not warrant a rating greater than 10 percent under any of the diagnostic codes pertaining to the knee. 





Left Foot Hallux Valgus

Service connection for hallux valgus of the left foot was granted in an August 1997 rating decision with an initial noncompensable evaluation assigned effective October 1, 1996. The current 10 percent evaluation was awarded in a November 2000 SSOC, also effective October 1, 1996. The Veteran contends that an increased rating is warranted as his disability manifests severe pain and prevents him from wearing certain types of shoes. 

The Veteran's left hallux valgus is currently rated as 10 percent disabling under Diagnostic Code 5280, pertaining specifically to hallux valgus. A 10 percent rating is assigned for hallux valgus with surgical resection of metatarsal head or severe impairment as to be equivalent to the amputation of the great toe. 38 C.F.R. § 4.71a, Diagnostic Code 5280. 

The currently assigned 10 percent rating represents the maximum possible evaluation under Diagnostic Code 5280 for hallux valgus; however, increased ratings are possible under Diagnostic Code 5284 pertaining to injuries of the foot. Under Diagnostic Code 5284, moderate residuals of foot injuries warrant a 10 percent rating, moderately-severe residuals of foot injuries warrant a 20 percent rating, and a maximum 30 percent rating is assigned for severe residuals. 38 C.F.R. § 4.71a, Diagnostic Code 5284. 

The Board finds that the Veteran's left hallux valgus most nearly approximates moderate and is contemplated by the currently assigned 10 percent rating for residuals of foot injuries. The disability was characterized as moderate during a July 2011 podiatry consultation at the Sacramento VA Medical Center (VAMC). The podiatrist noted that there was no dorsiflexion of the left hallux during range of motion testing and a left foot X-ray showed a moderate hallux valgus with a moderate-sized calcaneal plantar spur. The podiatrist also observed that there had been no significant change in the disability since 2005, when it was last examined at the VAMC. Surgery was discussed as a possible option, but due to the Veteran's fear of undergoing an operation, stiff, rocker-bottom shoes were ordered. 
After July 2011, the record does not contain any evidence describing the severity of the service-connected left hallux; the Veteran has not submitted any recent statements describing the symptoms of his disability nor has he sought any medical treatment. In a March 2011 correspondence, the Veteran stated that he wore slippers most of the time as his left foot was so painful and his bunion would rub against the sides of regular shoes. The Veteran has complained of severe left foot pain, but the Board finds his reports of severe symptoms due to hallux valgus are contemplated by the currently assigned 10 percent evaluation under Diagnostic Code 5280 (providing a maximum 10 percent rating for severe impairment). A rating in excess of 10 percent is also not appropriate under Diagnostic Code 5284 for foot injuries in light of the July 2011 VA podiatrist's characterization of the left bunion as moderate. Thus, the Board finds that a rating in excess of 10 percent for left hallux valgus is not warranted at any time during the claims period. 


Other Considerations

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a veteran is entitled to an extra-schedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extra-schedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

The Board finds that the rating criteria contemplate the Veteran's disabilities. The Veteran's left knee arthralgia and left foot hallux valgus are manifested by pain and a left foot bunion. These manifestations are contemplated in the rating criteria. In addition, the record does not indicate that the Veteran manifests an additional disability that is attributable to the combined effect of his multiple service-connected conditions. See Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014). As the Veteran's left knee and foot are contemplated by the rating criteria, a referral for consideration of an extraschedular rating is not warranted. The rating criteria are adequate to evaluate the disabilities on appeal and the record does not demonstrate an exceptional circumstance where the evaluation of either condition fails to capture all the symptoms of the service-connected disability. Id.


Duties to Notify and Assist

VA's has certain duties to notify and assist a veteran in the substantiation of a claim. 
not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) and that the claimant is expected to provide. Pelegrini v. Principi (Pelegrini II), 18 Vet. App. 112, 120-21 (2004), see 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

In this case, notice fulfilling the requirements of 38 C.F.R. § 3.159(b) was furnished to the Veteran in a March 2011 letter. The Veteran also received notice regarding the disability-rating and effective-date elements of the claims in the March 2011 letter. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

VA is also required to make reasonable efforts to help a claimant obtain evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to a claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4).

VA has obtained records of treatment reported by the Veteran, including service treatment records and records of VA treatment. The Veteran has not reported receiving any treatment for his left knee and left hallux valgus from any private health care providers. Additionally, while VA made several attempts to examine the Veteran and determine the current severity of the service-connected knee and left foot conditions, the Veteran failed to appear for the March 2011 examination and did not respond to a June 2014 request to schedule examinations. The Veteran has not indicated he would be willing to report for such examinations and the Board finds that VA has done its utmost to develop the evidence with respect to the Veteran's increased rating claims. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991) (VA's duty to assist the Veteran in developing the facts and evidence pertinent to a claim is not a one-way street. It is the responsibility of Veterans to cooperate with VA); see also 38 C.F.R. § 3.655(a), (b) (when a claimant fails without good cause to report for a necessary examination scheduled in conjunction with a claim for an increase, the claim shall be denied).

The Board also finds that VA has complied with the January 2014 remand orders of the Board. In response to the Board's remand, the Veteran was provided an August 2014 statement of the case (SOC) addressing his claims for increased ratings. Almost a month later, VA received a September 2014 letter from the Veteran's attorney filing a substantive appeal. Although the September 2014 letter did not specifically reference the increased rating claims, it was characterized as having been submitted in lieu of a VA Form 9, and the Board will resolve all doubt in the Veteran's favor and find that it perfected the appeals for increased ratings for left knee arthralgia and left foot hallux valgus. Therefore, VA has complied with the remand orders of the Board. 

For the reasons set forth above, the Board finds that VA has complied with the VCAA's notification and assistance requirements. 


ORDER

Entitlement to a rating in excess of 10 percent for left knee arthralgia is denied.

Entitlement to a rating in excess of 10 percent for left great toe hallux valgus is denied. 




REMAND

The Board finds that additional development is necessary before a decision may be rendered with respect to the claims for entitlement to service connection for an acquired psychiatric disorder and entitlement to TDIU. 

The Veteran was provided a VA psychiatric examination in July 2014. The examination report includes a medical opinion addressing the etiology of the Veteran's currently diagnosed major depression; the examiner found that the Veteran's depression was not incurred in or caused by active duty service. Unfortunately, the Board finds that the July 2014 medical opinion is not adequate as it does not address the evidence that the Veteran's depression may have pre-existed active duty service. 

While receiving psychiatric treatment at the Sacramento VAMC, the Veteran consistently reported experiencing depression since he was a teenager. He has also reported that he attempted suicide in 1990 (two years before his enlistment into active service) and was hospitalized in a private facility identified as the Sutter Center for Psychiatry in Sacramento, California. As there is evidence that a chronic psychiatric disorder may have pre-existed service, the presumption of soundness is for application in this case and the Board must obtain a medical opinion addressing the possibility of a pre-existing psychiatric disorder.

In an August 2014 statement, the Veteran also described receiving recent psychiatric treatment with Dr. Li Li at the Eastern Medical Center in Sacramento. VA has a duty to obtain relevant records of treatment reported by private physicians, and efforts must be made to obtain records from the Sutter Center for Psychiatry and Eastern Medical Center. See Massey v. Brown, 7 Vet. App. 204 (1994). 

Finally, the claim for TDIU is inextricably intertwined with the claim for entitlement to service connection for a psychiatric disorder and must also be remanded. 

Accordingly, the case is REMANDED for the following action:

1. Contact the Veteran and his representative and ask that they provide medical release forms to allow VA to obtain records from the Sutter Center for Psychiatry (pertaining to the Veteran's hospitalization for a suicide attempt in 1990) and from Dr. Li Li at the Eastern Medical Center. 

If valid medical release forms are received, obtain copies of all available treatment records from the Sutter Center for Psychiatry and Dr. Li Li at the Eastern Medical Center (both facilities are located in Sacramento, California). Copies of the records must be associated with the paper or virtual claims file. All efforts to obtain the records must be documented in the claims file. 

2. Provide the claims file to a VA examiner with the necessary expertise to issue a medical opinion regarding the etiology of the Veteran's psychiatric disorder(s). 

After review of the claims file, including the Veteran's Sacramento VAMC treatment records, the examiner should offer an opinion addressing whether any currently present acquired psychiatric disorder:

a) Clearly and unmistakably (obvious and manifest) existed prior to service;

b) And if so, whether it clearly and unmistakably (obvious and manifest) did not undergo an increase in severity during service beyond the natural progress of the disease.

c) If the Veteran manifests a personality disorder, the examiner should also determine whether it is more likely than not (i.e., probability greater than 50 percent), at least as likely as not (i.e., probability of 50 percent), or less likely than not (i.e., probability less than 50 percent), that the Veteran's personality disorder was aggravated during active duty service due to a superimposed injury.

The bases for all opinions expressed should also be provided.

The record contains some evidence that the Veteran's major depression may have pre-existed his enlistment into active duty service. The Veteran has consistently reported to various VAMC providers that he experienced depression as a teenager. In May 1999, he also stated that he was hospitalized in 1990 (two years before his enlistment into military service) following a suicide attempt. The August 1992 enlistment examination shows that the Veteran was psychiatrically normal, but in August 1993 he reported a history of depression. He was also admitted to a 12 week substance abuse program during service. No psychiatric conditions or complaints were noted on the September 1996 separation examination. In a February 2006 correspondence, the Veteran stated that he incurred a psychiatric disorder during service due to several stressors including separation from his wife and the death of a fellow soldier during training exercises. He has also reported that he did not seek mental health treatment during service as he wanted to remain on active duty and was too ashamed to get treatment following his discharge from service.

3. Then, readjudicate the claims on appeal. If the benefits sought on appeal are not fully granted, issue a SSOC before returning the case to the Board, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
MILO H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs