Citation Nr: 1755087 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 12-28 747 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to an initial disability evaluation in excess of 30 percent for service-connected posttraumatic stress disorder (PTSD) with depressive disorder.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

Veteran; Veteran's Daughter


ATTORNEY FOR THE BOARD

Alexia E. Palacios-Peters, Associate Counsel

INTRODUCTION

The Veteran had active service from June 1967 to June 1969.

This matter comes before the Board of Veteran's Appeals (Board) on appeal from a May 2010 rating decision of the Department of Veterans Affairs Regional Office (RO) in St. Petersburg, Florida, which granted entitlement to service connection for PTSD with depressive disorder and assigned an initial 30 percent rating, effective November 2009.

The Veteran was afforded a hearing before the undersigned Veterans Law Judge in June 2016. A written transcript of this hearing has been prepared and incorporated into the evidence of record.

In December 2016, the Board remanded the case in order to afford the Veteran another VA examination with a psychiatrist, to obtain additional private treatment records, and VA treatment records.

The Veteran submitted additional evidence to the Board and waived RO consideration of the evidence. June 2017 Due Process Waiver.

A June 2017 supplemental statement of the case continued the 30 percent rating for PTSD. The matter has now returned for further adjudication.


FINDING OF FACT

PTSD was productive of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks due to depressed mood, anxiety, irritability, panic attacks, and chronic sleep impairment.



CONCLUSION OF LAW

The criteria for entitlement to an initial rating in excess of 30 percent for PTSD have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.321, 4.1, 4.21, 4.126, 4.130, Diagnostic Code (DC) 9411 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5102, 5103, 5103A, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C. § 5103 (a); 38 C.F.R. § 3.159 (b)(1) (2017).

The appeal arises from a disagreement with the initially assigned disability rating after service connection was granted. Once a decision awarding service connection, a disability rating, and an effective date has been made, section 5103(a) notice is no longer required because the claim has already been substantiated.

The RO provided VCAA notice in a November 2009 letter and the Board finds that VA has satisfied its duty to notify under the VCAA.

VA also has a duty to assist the Veteran in the development of a claim. This duty includes assisting the Veteran in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159.

The record reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. Specifically, the information and evidence that have been associated with the claims file include the Veteran's VA and private treatment records.

Also, the Veteran was afforded VA rating examinations for PTSD in March 2010 and June 2017. The Board finds the examinations are adequate because they revealed sufficient findings, considered the Veteran's contentions, and reported results that allow for the appropriate assessments to be made in this appeal. The duty to assist has been satisfied.

The Board finds that there has been substantial compliance with the December 2016 Board remand directives and, therefore, no further remand is necessary. Stegall v. West, 11 Vet. App. 268 (1998).

Increased Rating

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.1 (2017). Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2 (2017); resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3 (2017); where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7 (2017); and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disability upon the person's ordinary activity, 38 C.F.R. § 4.10 (2017). Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the veteran's condition. Schafrath at 594; See also 38 C.F.R. §§ 4.1, 4.2. 

The Veteran is seeking an increased initial rating for his service-connected PTSD, which is currently rated in accordance with the criteria set forth in the Schedule for Rating Disabilities, 38 C.F.R. Part 4, Diagnostic Code 9411 (2017) as 30 percent disabling effective November 9, 2009.

A 30 percent evaluation is warranted when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, DC 9411.

A 50 percent evaluation is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation is warranted when there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and the inability to establish and maintain effective relationships. Id.

A 100 percent evaluation is warranted if there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id.

Furthermore, as the United States Court of Appeals for the Federal Circuit recently explained, evaluation under 38 C.F.R. § 4.130 is "symptom-driven," meaning that "symptomatology should be the fact-finder's primary focus when deciding entitlement to a given disability rating" under that regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed.Cir.2013). The symptoms listed are not exhaustive, but rather "serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating." Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002).

In the context of determining whether a higher disability evaluation is warranted, the analysis requires considering "not only the presence of certain symptoms[,] but also that those symptoms have caused occupational and social impairment in most of the referenced areas" - i.e., "the regulation ...requires an ultimate factual conclusion as to the Veteran's level of impairment in 'most areas.'" Vazquez-Claudio at 117-18; 38 C.F.R. § 4.130, DC 9411. 

Additionally, consideration is given to the frequency, severity, and duration of psychiatric symptoms, the length of remission, and the Veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment, rather than solely on the examiner's assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126 (a). Furthermore, when evaluating the level of disability arising from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126 (b). It is necessary to evaluate a disability from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.2. 

The Global Assessment of Functioning (GAF) Scale reflects the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM-4). GAF scores ranging between 61 to 70 reflect mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally indicate that the individual is functioning pretty well, and has some meaningful interpersonal relationships. Scores between 51 to 60 are indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). GAF scores between 41 to 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifter) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). 

The Board notes that the newer Diagnostic and Statistical Manual of Mental Disorders (5th Ed.) (DSM-5) has been released, and 38 C.F.R. § 4.130 has been revised to refer to the DSM-5. The DSM-5 does not contain information regarding GAF scores. However, since much of the evidence relevant to this claim was obtained during the time period that the DSM-IV was in effect, and the DSM-5 is not applicable to claims (such as the instant claim) certified to the Board before August 14, 2014, the Board will still consider the assigned GAF scores as relevant to this appeal.

After a review of the record, the Board finds that the impact of the Veteran's service-connected PTSD on his occupational and social functioning does not warrant a 50 percent disability rating or higher. See 38 C.F.R. § 4.130, DC 9411.

The Veteran's March 2010 VA PTSD examination reflected the Veteran exhibited PTSD signs and symptoms that are transient or mild and decrease work efficiency and ability to perform occupational tasks only during periods of significant stress. March 2010 VA examination. The March 2010 VA examiner noted the Veteran experiences intermittent episodes of anxiety and depression that lead him to withdraw and become socially isolated for brief periods of time. Id. The disturbance causes clinically significant distress or impairment in the Veteran's social, occupational, or other important areas of functioning.

The March 2010 examiner found the Veteran's speech unremarkable, his affect good, his mood normal, and his memory normal. Id. The Veteran's thought process was rambling, circumstantial and tangential. Id. The Veteran exhibited a depressed mood, social withdrawal, loss of appetite, and irritability. Id. His depressive symptoms occur sporadically, usually following a nightmare or flashbacks from Vietnam, and are intermittent and mild in severity. Id. The Veteran's memory was normal and the March 2010 VA examiner found the Veteran understands the outcome of his behavior. The Veteran's GAF score was 60. Id.

The Veteran's private treatment records in November 2016 and December 2016 showed the Veteran's mood as depressed and his affect as restricted, anxious and restless. November 2016 Private Treatment Records; December 2016 Private Treatment Records. His speech and language, concentration, and recent, intermediate, and remote memories were intact. November 2016 Private Treatment Records. The Veteran's judgment and insight were fair. Id. His thought processes were linear and goal oriented with nightmares and flashbacks. November 2016 Private Treatment Records; December 2016 Private Treatment Records. The Veteran reported he could not work well and that his marriage got destroyed. November 2016 Private Treatment Records. The Veteran's ability to problem solve and think abstractly were intact. Id.

The Veteran's VA treatment records between 2010 and 2017 showed consistent symptoms. The Veteran's affect showed constricted, broad, and anxious, with a congruent mood. VA Treatment Records. His speech showed normal rate and volume. Id. The Veteran reported feeling very upset when something reminded him of the stressful experience of the past. August 2016 VA Treatment Records. He exhibits hypervigilance, heightened hyper startled response, visual flashbacks, intrusive combat memories, and anger. December 2010 VA Treatment Records; August 2016 VA Treatment Records.

The Veteran also reported recurrent, involuntary, and intrusive distressing memories, dreams, and night terrors due to his traumatic experiences. VA Treatment Records. He reported panic attacks when the flashbacks occurred which result in persistent avoidance of cues of memories related to the traumatic events. November 2016 VA Treatment Records.

In the VA treatment records, the Veteran's memory showed his recent memory was forgetful at times and his remote memory was normal in December 2010, February 2011, and August 2016. He displayed normal recent and remote memory in October 2016 and February 2017. The Veteran's judgment was consistently good and fair and the Veteran was able to understand the treatment plan and make informed decisions. February 2011 VA treatment records.

The VA treatment records also showed the Veteran's thought process to be logical, linear, and goal-oriented between May 2010 and February 2017. VA Treatment Records. The Veteran also had flashbacks and nightmares. August 2016 VA Treatment Records. The Veteran's mood was anxious, depressed, and irritable between May 1010 and August 2016. In February 2017, the Veteran's mood was euthymic.

The Veteran's interpersonal relationships remained cooperative from December 2010 through February 2017. VA Treatment Records. Additionally, the Veteran experienced feelings of detachment from others. August 2016 VA Treatment Records; February 2017 VA Treatment Records. His wife left him but he no longer dates. Transcript of June 2016 Hearing at 7; August 2016 VA Treatment Records. The Veteran's daughter testified that the Veteran is very isolated and he does not function normally. Transcript of June 2016 Hearing at 7. He is close to his children and babysits his grandchildren. August 2016 VA Treatment Records.

The Veteran stated that he suffers from panic attacks and certain things bring back memories. Transcript of June 2016 Hearing at 6. He has nightmares all the time. Id. at 7. He also stated he has fits of irritability and mood that he cannot seem to control sometimes. Id. at 6.

In the December 2016 Remand, the Board requested that a VA psychiatrist provide a comprehensive review of the file and retrospective opinion on the severity of the Veteran's PTSD symptoms since 2009. 
 
The June 2017 VA examiner (psychiatrist) found that the Veteran's file did not contain any conflicting medical evidence and all medical evidence had been reviewed by prior clinicians. June 2017 VA examination. The Veteran's June 2017 VA examination primarily produced the same symptoms as his March 2010 VA examination. The Veteran indicated that he was presently "ok" but it would be better if his children could leave the house and be independent. He slept about 6 to 7 hours per night, is able to shower and bathe, run errands, and eats independently. Id. The Veteran experiences nervousness when there are loud noises and has dreams during June, July, and August when there are fireworks around. Id. He takes care of himself, he drives around and even drove to the examination. He takes care of the bills, grocery-shopping and cooking but "at times they cook". His family is not afraid of him, and his neighbors do not consider him threatening, aggressive or violent. In regard to suicidal attempts he "thought about suicide when [he] came back from Vietnam, [his] friend had died...." but currently, it is an incidental thought, with no plans or intent. He also reported the following: "I spoke to 15 people and they are getting about $1500 to $2000 dollars a month and I am getting $300 a month."

The VA examiner indicated that the Veteran's symptoms were productive of anxiety and disturbances of motivation and mood. The Veteran presented at the exam casually attired and neatly groomed and appeared approximately his stated age, healthy-looking, and slightly winded. His speech was fluent, normal pitch and tone. His mood was neutral with a restricted range of affect. His thought processes were goal-directed with no formal thought disorder. His thought content was appropriate to the situation with no reported delusions, hallucinations, obsessions or compulsions. He denied suicidal or homicidal ideation.

The June 2017 VA examiner concluded the Veteran's occupational and social level to be impaired with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation.

The Veteran's PTSD symptoms do not meet the criteria for a 50 percent disability rating or higher. The Veteran's occupational and social impairment corresponds with the criteria associated with a 30 percent rating. The Veteran did not display a flattened affect per the 50 percent rating but a normal, constricted, or congruent affect. His speech remained at a normal rate and volume.

The Veteran reported he experienced panic attacks and nightmares occurred about once a month which is contemplated in the currently assigned 30 percent rating. He did not exhibit any difficulty in understanding complex commands or impairment of short- and long-term memory other than mild forgetfulness at times. The evidence showed his judgment was good and fair. The Veteran's mood was irritable, anxious, and depressed. Although the Veteran reported he has fits of irritability and shortness of temper, these episodes are not accompanied by periods of violence. While the 2017 VA examiner noted that the Veteran's symptoms included disturbances of motivation and mood, ultimately, the VA examiner found that the overall disability is productive of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation. The March 2010 examiner noted that the Veteran displayed thought processes that were rambling, circumstantial, and tangential but ultimately found that the Veteran understood the outcome of his behavior (i.e., judgment). In other treatment records and the 2017 VA examination, he displayed logical, linear, and goal oriented thought processes. Thus, a higher level of functional impairment is not persuasively shown. 

The Veteran and his daughter also reported the Veteran is divorced and he has not dated since the divorce. The Veteran states he is close to his children and his two sons living with him. He sometimes babysits his grandkids. The Veteran ran his own concession business for 28 years after service. The evidence does not persuasively show difficulty in establishing and maintaining effective work and social relationships.

It is also notable that the Veteran reported that he had "incidental thoughts" of suicide. "[I]n the context of a 70[%] rating, [38 C.F.R.] § 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas." Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (Fed. Cir. 2013). Thus, assessing whether a 70% evaluation is warranted requires a two-part analysis: "The . . . regulation contemplates[: (1)] initial assessment of the symptoms displayed by the veteran, and if they are of the kind enumerated in the regulation[; and (2)] an assessment of whether those symptoms result in occupational and social impairment with deficiencies in most areas." Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013). "Suicidal ideation appears only in the 70% evaluation criteria [] [t]here are no analogues at the lower evaluation levels." Also, "[b]oth passive and active suicidal ideation are comprised of thoughts: passive suicidal ideation entails thoughts such as wishing that you were dead, while active suicidal ideation entails thoughts of self-directed violence and death." Bankhead v. Shulkin, No. 15-2404, slip op. at 10 (U.S. Vet. App. Mar. 27, 2017) (precedential panel decision). 
Evidence of more than thought or thoughts of ending one's life to establish the symptom of suicidal ideation, is not required. In other words, a veteran need not be at a risk, whether a high or low risk, of self-harm in order to establish the criteria of suicidal ideation. "[T]he presence of suicidal ideation alone [] may cause occupational and social impairment with deficiencies in most areas." Bankhead, No. 15-2404, slip op. at 11. Also it may not be found that a claimant does not have suicidal ideation merely because he has not been hospitalized or treated on an inpatient basis, as this would impose a higher standard than the criteria in the Diagnostic Codes for mental disorders. Bankhead, slip op. at 12. "VA did not include in the criteria for a 70% evaluation the risk of actual self-harm. In fact, to the extent that risk of self-harm is expressly mentioned in § 4.130 at all, it is referenced in the criteria for a 100% evaluation as 'persistent danger of hurting self, a symptom VA deemed to be typically associated with total occupational and social impairment. 38 C.F.R. § 4.130." However, VA adjudicators are not "absolutely prohibited from considering [] risk of self-harm in assessing [a] level of occupational and social impairment" but there must be a differentiation between suicidal ideation, which is generally indicative of a 70% evaluation, and a risk of self-harm, the persistent danger of which is generally indicative of a 100% evaluation. Bankhead, slip op. at 12. 

Here, while the Veteran reported that he had "incidental thoughts" of suicide, he maintained that he had no plans or intent. Crucially, this symptom has not caused occupational and social impairment in most areas. In fact the evidence does not show that this symptom has had any impact on the Veteran's functioning. He maintains family relations, and his judgment and thought processes are well intact as detailed above. He takes care of himself and his financial matters, and he is completely independent in performing the activities of daily living. The VA psychiatrist carefully considered the Veteran's reports and ultimately concluded that the Veteran's symptoms were more consistent with a lesser degree of functional impairment. The Board therefore finds no persuasive evidence that the frequency, duration, and severity of the Veteran's symptoms more nearly approximate the symptomatology associated with a 70 percent rating. 

The Board notes that the Veteran was assigned a GAF score of 60. A GAF score can be probative as it relates directly to the Veteran's level of impairment of social and industrial adaptability, as contemplated by the rating criteria for mental disorders. Massey v. Brown, 7 Vet. App. 204, 207 (1994). Here, the Veteran's GAF score is reflective of moderate impairment of occupational and social functioning. The qualitative descriptions from the above evidence are consistent with such GAF scores, and are consistent with a 30 percent rating.

The Board finds that a review of the medical records, VA psychiatric examinations, and the lay statements demonstrates that the Veteran's PTSD primarily manifested with symptoms of depressed mood, anxiety, irritability, sleep disturbances and nightmares. Overall, the Veteran's psychiatric disability more closely resembles occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. Therefore, the Board finds that the Veteran's PTSD does not warrant a higher rating in excess of a 30 percent rating.

Additionally, neither the Veteran nor his representative has raised any other issues with respect to the increased rating claim for his PTSD, nor have any other assertions been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 369-70 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

In sum, the weight of the credible evidence demonstrates that the Veteran's PTSD did not warrant a rating in excess of 30 percent under the relevant diagnostic code. As the preponderance of the evidence is against the claim for an increased rating, the claim must be denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C. § 5107 (2012); 38 C.F.R. § 3.102 (2017).


ORDER

Entitlement to a rating in excess of 30 percent for PTSD is denied.



____________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs