Citation Nr: 1826238 
Decision Date: 04/26/18 Archive Date: 05/07/18

DOCKET NO. 13-28 468 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to service connection for hypertension.

2. Entitlement to service connection for a bilateral knee disability.

3. Entitlement to an initial rating in excess of 10 percent for headaches.

4. Entitlement to service connection for a dental disability.


ATTORNEY FOR THE BOARD

T. Jiggetts, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Air Force from September 1987 to January 1988 and from October 2001 to October 2003.

This appeal comes to the Board of Veterans' Appeals (Board) from a December 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia, which granted service connection for headaches and assigned a 10 percent rating; denied service connection for a bilateral knee disability; and, denied service connection for high blood pressure, now characterized as hypertension. The Veteran is also appealing a February 2012 rating decision of the RO that, among other things, denied service connection for a dental disability. The Veteran timely appealed.

The issues on appeal initially came before the Board in July 2015, when the Board remanded the case for further development, to include obtaining VA examinations. The case has now been returned to the Board for further action.

The Board notes that a claim for service connection for a dental condition is also considered a claim for VA outpatient dental treatment. Mays v. Brown, 5 Vet. App. 302, 306 (1993). However, in dental claims, the RO adjudicates the claim of service connection and the VA Medical Center (VAMC) adjudicates the claim for outpatient treatment. As this matter stems from an adverse RO determination, the appeal is limited to the issue of entitlement to service connection for a dental trauma for compensation purposes. In any event, the claim for dental treatment has been raised and that aspect of the claim should be forwarded to the nearest VAMC for adjudication.


FINDINGS OF FACT

1. The Veteran has a current diagnosis of hypertension, but this diagnosis has not been shown to be linked to service.

2. The Veteran has a current diagnosis of a bilateral knee disability, but this diagnosis has not been shown to be linked to service.

3. The Veteran's service connected headaches have been manifest by pain, but without characteristic prostrating attacks averaging one every two months.

4. The Veteran does not have a dental disability resulting in loss of body of maxilla or mandible for which service connection can be granted for compensation purposes.


CONCLUSIONS OF LAW

1. The criteria for service connection for hypertension have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309(e) (2017).

2. The criteria for service connection for a bilateral knee disability have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309(e) (2017).

3. The criteria for an initial rating in excess of 10 percent for headaches have not been met. 38 U.S.C. §§ 1155, 5103(a), 5103A, 5107 (2012); 38 C.F.R. §§ 3.321, 4.124a, Diagnostic Code 8100 (2017).

4. The criteria for a grant of service connection for a dental disorder for compensation purposes are not met. 38 U.S.C. §§ 1110, 1712, 5107 (2012);38 C.F.R. §§ 3.306, 3.381, 4.150, 17.161 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. The Veterans Claims Assistance Act of 2000

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide in accordance with 38 C.F.R. § 3.159(b)(1). This notice must be provided prior to an initial unfavorable decision on a claim by the AOJ. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). 

Here, the RO sent correspondence throughout the appeals process, but specifically in August 2009, March 2011, and November 2011 that informed the Veteran of what evidence was needed to establish the benefits sought, of what VA would do or had done, and of what evidence the Veteran should provide. In addition, the letters informed the Veteran of how disability ratings and effective dates are assigned. The Board finds that any defect with regard to the timing or content of the notice to the Veteran is harmless because of the thorough and informative notices provided throughout the adjudication and because the Veteran had a meaningful opportunity to participate effectively in the processing of the claims, with an adjudication of the claims by the RO subsequent to receipt of the required notice. There has been no prejudice to the Veteran, and any defect in the timing or content of the notices has not affected the fairness of the adjudication. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006) (specifically declining to address harmless error doctrine); see also Dingess v. Nicholson, 19 Vet. App. 473 (2006). Thus, VA has satisfied its duty to notify the Veteran. 

VA must also make reasonable efforts to assist the Veteran in obtaining evidence necessary to substantiate a claim for the benefits sought unless no reasonable possibility exists that such assistance would aid in substantiating the claim. This duty includes assisting with the procurement of relevant records, including pertinent treatment records, and providing an examination when necessary. See 38 U.S.C. § 5103A; 38 C.F.R. § 3.159. The evidence of record contains the Veteran's service treatment records, lay statements of the Veteran, as well as post-service treatment from both private and VA treatment providers. Also of record are VA examinations conducted in August 2010 and November 2015. 

In light of the foregoing, the Board concludes that the VA's duties to the Veteran have been fulfilled as to the issues decided herein. As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Newhouse v. Nicholson, 497 F.3d 1298 (Fed. Cir. 2007). 

II. Legal Criteria & Analysis - Service Connection

Service connection may be granted for disability resulting from disease or injury incurred or aggravated during active military service. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303 (2017). Service connection may also be granted for any injury or disease diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d). Generally, service connection requires: (1) medical evidence of current disability; (2) medical evidence, or in certain circumstances lay testimony, of in-service incurrence or aggravation of an injury or disease; and (3) medical evidence of a nexus between the current disability and the in-service disease or injury. See Hickson v. West, 12 Vet. App. 247 (1999).

Service connection may also be granted for listed chronic diseases when the disease is manifested to a compensable degree within one year of separation from service. 38 U.S.C. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. Under § 3.303(b), an alternative method of establishing the second and/or third elements of service connection for a listed chronic disease is through a demonstration of continuity of symptomatology. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (38 C.F.R. § 3.303(b) does not apply to any condition that has not been recognized as chronic under 38 C.F.R. § 3.309(a)).

Hypertension

Service treatment records are silent as to any complaint, diagnosis, or treatment of high blood pressure, although a few elevated readings were noted. 

Post service medical records in the Veteran's claims file include medical records from the Atlanta VAMC. These records reflect the Veteran was diagnosed with hypertension in 2008 and has been on medication since 2008 to control it, but there is no medical evidence establishing a nexus between the Veteran's current hypertension and an in-service disease, injury or event. 

The Veteran submitted to a November 2015 VA examination for hypertension. The examiner noted the Veteran was diagnosed with hypertension in 2008, and that he takes medication to control it. Three blood pressure readings were recorded on the date of examination as 132/88, 133/83, and 117/75. After the in person examination of the Veteran, and review of the Veteran's claim file, the examiner opined that the Veteran's hypertension was less likely than not incurred or caused by his claimed in-service elevated blood pressure. As rationale, the examiner noted that the Veteran's blood pressure was noted as normal upon entrance to service in 1987 with a reading of 110/80; that while the Veteran was in the reserves, between his first and second periods of active duty, his blood pressure readings were 120/80 in 1995 and 132/80 in June 1987; and, that during the Veteran's second term of active duty, his blood pressure readings were 143/76 in March 2003, 131/75 in April 2003, and 145/84 in October 2003. The examiner opined that although some of these readings are slightly elevated, there is not enough evidence to establish a diagnosis of hypertension while in service. Moreover, the examiner noted that hypertension was not indicated in post service treatment records until between March 2007 and June 2008, approximately 5 years after the Veteran's active duty service. 

The Board has considered the lay evidence in this case, in particular the Veteran's statements that he believes his hypertension was caused by his service. However, while lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case (the onset of hypertension), it falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). In other words, although the Veteran is competent to report the presence of symptoms such as dizziness, hypertension is not the type of condition that is amenable to mere lay diagnosis - specific findings are needed to properly assess and diagnose hypertension, and to determine its etiology. Jandreau; Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). 

The Board finds that upon review and consideration of the Veteran's service treatment records; post service treatment records; the Veteran's lay statements; and, the November 2015 VA examination, the medical evidence has not established a link, or nexus, between the Veteran's current hypertension and his military service. Since direct service connection requires medical evidence of a nexus, service connection must be denied. Also, with no showing of hypertension within one year of service separation, service connection on a chronic disease presumptive basis is denied.

Bilateral Knee Disability

The Veteran filed a claim for bilateral knee pain, asserting that the rigors of his active and reserve duty resulted in his current bilateral knee disability.

Service treatment records are silent as to any complaint, diagnosis, or treatment of bilateral knee pain during the Veteran's period of active duty. 

Post service treatment records reflect the Veteran complained of bilateral knee pain. A March 2007 record reflects the Veteran complained of left knee pain, had an x-ray completed, and the impression indicated mild left knee degenerative joint space narrowing. An April 2007 record reflects the Veteran complained of left knee pain that started a week ago, after a running test. The Veteran reported left knee pain when going up an incline, going upstairs, or getting up out of a chair when he sits for awhile. Labs were reviewed, x-rays were obtained, and the examiner diagnosed the Veteran's left knee as normal, except mildly tender medial aspect of anterior joint line. A January 2011 record reflects x-rays were taken of both knees and the report shows mild osteoarthritis of both the right and left knee. A February 2013 x-ray of the knees showed mild degenerative changes of the knees. A March 2013 record reflects the Veteran complained of bilateral knee pain described as dull, achy, stiffness that began in 2002, although he does not recall a specific injury to his knees. 

The Veteran submitted to a November 2015 VA examination of his bilateral knees. The examiner opined that the Veteran's claimed bilateral knee disability was less likely than not incurred in or caused by in service physical rigors. As rationale, the examiner stated that, after thorough review of the Veteran's case file, there is no evidence that his claimed knee condition was present while in service, or was evidenced to a compensable degree within a year of discharge. No claim was made by the Veteran for his knees on his discharge physical in October 2003; there is a paucity of interval treatment records between 2003 and 2011 to establish a chronic knee condition continuing after service; and, the first mention of knee pain was in 2007, over four years after the Veteran's last period of active duty. The Veteran was diagnosed with arthritis in 2007 and has had progression of this condition over the years. Age at onset, based on his age at time of this finding, is not abnormal and also decreases the likelihood that this was a service incurred condition.

The Board has considered the lay evidence in this case, in particular the Veteran's statements that he believes his bilateral knee disability was caused by his service. However, while lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case (a bilateral knee disability), it falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). In other words, although the Veteran is competent to report the presence of symptoms such as pain, a bilateral knee disability is not the type of condition that is amenable to mere lay diagnosis - specific findings are needed to properly assess and diagnose a bilateral knee injury, and to determine its etiology. Jandreau; Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). 

The Board finds that upon review and consideration of the Veteran's service treatment records; post service treatment records; the Veteran's lay statements; and, the November 2015 VA examination, the medical evidence has not established a link, or nexus, between the Veteran's current bilateral knee disability and his military service. Since direct service connection requires medical evidence of a nexus, service connection must be denied. Also, with no showing of a bilateral knee disability within one year of service separation, service connection on a chronic disease presumptive basis is denied.

Dental Disability

Service connection may be awarded for missing teeth due to dental trauma or bone loss in service. The law and regulations also provide that treatable carious teeth, replaceable missing teeth, dental or alveolar abscesses, and periodontal disease are considered non-disabling conditions and may be considered service-connected solely for the purpose of determining entitlement to VA dental examination or outpatient dental treatment. See 38 U.S.C. § 1712 (2012); 38 C.F.R. §§ 3.381, 17.161 (2017); see also Woodson v. Brown, 8 Vet. App. 352, 354 (1995).

To establish entitlement to service connection for loss of a tooth, the veteran must have sustained a combat wound or other in-service trauma. 38 U.S.C. § 1712 (2012); 38 C.F.R. § 3.381(b) (2017). The significance of finding that a dental condition is due to in- service trauma is that a veteran will be eligible for VA outpatient dental treatment, without being subject to the usual restrictions of a timely application and one-time treatment. 38 C.F.R. § 17.161(c) (2017).

In this case, the STRs reflect that the Veteran was seen for complaints of pain and soreness in the mouth, and was treated for caries on multiple occasions. However, no teeth were noted to be fractured or missing, and there is no evidence of record that the Veteran sustained any trauma or injury to his teeth in service. Similarly, no nonunion or malunion of the mandible or maxilla, loss of the ramus or condyloid or coronoid process, or loss of hard palate was noted. Similarly, the Veteran has not been diagnosed with or treated for osteomyelitis. 

Service connection for compensation purposes is only warranted for certain dental conditions. Specifically, dental disabilities that may be awarded compensable disability ratings are set forth under 38 C.F.R. § 4.150 (2017). These disabilities include chronic osteomyelitis or osteoradionecrosis of the maxilla or mandible, loss of the mandible, nonunion or malunion of the mandible, limited temporomandibular motion, loss of the ramus, loss of the condyloid or coronoid processes, loss of the hard palate, loss of teeth due to the loss of substance of the body of the maxilla or mandible and where the lost masticatory surface cannot be restored by suitable prosthesis, when the bone loss is a result of trauma or disease but not the result of periodontal disease. 38 C.F.R. § 4.150, Diagnostic Codes 9900-9916 (2017).

As already noted, there is no evidence of loss of mandible, maxilla, or hard palate during service. Thus, no anatomical loss or bony injury of the mandible, maxilla, or teeth, nor osteomyelitis/osteoradionecrosis, is shown. 

In view of the foregoing, the Board concludes the preponderance of the competent medical and other evidence of record is against a finding the Veteran currently has a dental disorder for which VA compensation may be paid. As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application in the instant case. See generally Gilbert, supra; see also Ortiz v. Principi, 274 F.3d 1361 Fed. Cir. 2001). Therefore, the Veteran does not satisfy the requirements for the establishment of service connection for a dental disorder for compensation purposes, and the claim must be denied.

The Board reiterates that, as discussed in the Introduction, the issue of entitlement to dental treatment is nor presently before it for adjudication. Nevertheless, the Board wishes to emphasize that its determination that service connection is not warranted for a dental disorder for compensation purposes does not preclude the Veteran's entitlement to dental treatment from VA. For example, Class II(a) criteria provides that dental treatment may be provided for a service-connected noncompensable dental condition which resulted from combat wounds or other service trauma. 38 C.F.R. § 17.161 (2017); 38 U.S.C. § 1712(a)(1)(C) (2012).

III. Legal Criteria & Analysis - Increased Rating for Headaches

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. This Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. For the application of this schedule, accurate and fully descriptive medical examinations are required, with emphasis upon the limitation of activity imposed by the disabling condition. It is essential, both in the examination and in the evaluation of disability, that each disability be viewed in relation to its history. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.1 (2017).

The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999).

It is the responsibility of the rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2 (2017). Consideration of factors wholly outside the rating criteria constitutes error as a matter of law. Massey v. Brown, 7 Vet. App. 204, 207-08 (1994). Evaluation of disabilities based upon manifestations not resulting from service-connected disease or injury and the pyramiding of ratings for the same disability under various diagnoses is prohibited. 38 C.F.R. § 4.14 (2017). 

It is the policy of VA to administer the law under a broad interpretation, consistent with the facts in each case, with all reasonable doubt to be resolved in favor of the claimant. However, the reasonable doubt rule is not a means for reconciling actual conflict or a contradiction in the evidence. 38 C.F.R. § 4.3 (2017).

The Veteran's headaches are currently evaluated under Diagnostic Code 8100, which pertains to migraines. Under Code 8100, a 10 percent rating is warranted for headaches manifested by characteristic prostrating attacks averaging one in two months over the last several months. A 30 percent rating is warranted for headaches manifested by characteristic prostrating attacks occurring on an average once a month over the last several months. A 50 percent rating is warranted for very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. 38 C.F.R. § 4.124a, Code 8100. The rating criteria do not define "prostrating," nor has the Court. See, e.g., Fenderson, 12 Vet. App. at 126-27 (in which the Court quotes Diagnostic Code 8100 verbatim but does not specifically address the matter of what is a prostrating attack.).

An August 2010 VA examination reflects the Veteran's report of experiencing headaches five to ten times per month, lasting approximately five hours at a time and requiring him to sit or lie down until his medication kicks in. The examiner did not offer an opinion as to whether the Veteran experienced prostrating attacks.

The July 2014 private evaluation reflects that the Veteran reported migraine headaches occurring two to three times per year. However, the private examiner also recorded that the headaches lasted more than two days when they occurred and indicated that the Veteran experienced "very frequent" characteristic prostrating attacks of migraine headache pain occurring more frequently than once per month.

A November 2015 VA examination found that the Veteran uses propranolol daily as treatment for his headaches. The examiner recorded the Veteran reports headaches occurring twice per week and lasting 3-4 hours at a time, but noted that these headaches were not prostrating attacks, and do not interfere with the Veteran's ability to work. The examiner noted that the Veteran's headaches appear to be worsened by uncontrolled blood pressure and have responded well to propranolol in the past. There were no ER visits for headaches in the last 2 years. The examiner stated that the most recent description that the Veteran offers for his headaches is less definitive for migraines and may be more related to tension headaches. 

Medical treatment records from the Atlanta VAMC are associated with the Veteran's claims file. An October 2014 record reflects the Veteran reported headaches that occur every other 2-3 weeks, around 2-3 days that week, and on at least one of those days, he takes up to 1950 mg of acetaminophen and stays in bed until the headache is gone. A September 2015 record reflects the Veteran complained of headaches described as "different every time." He reported that noise and occasionally bright light aggravates his headaches, and he usually takes Tylenol and goes to sleep. An April 2017 record reflects the Veteran presented for an annual appointment and although his history of migraine headaches was noted, the Veteran presented with no acute complaints. 

Based on a review of the evidence, the Board finds that the evidence of record does not support a finding that the Veteran experiences characteristic prostrating headache attacks on an average of at least once a month. This conclusion is supported by the medical evidence of record, to include in particular the Veteran's November 2015 VA examination report. The Board does not find the private July 2014 evaluation probative, as it is both internally contradictory and inconsistent with the remainder of the evidence of record. Further, the August 2010 VA examiner did not provide an opinion as to whether the Veteran's headaches caused prostrating attacks but noted that, when he experienced a headache, he had to sit or lie down only until his medication took effect. Considering the evidence of record in its whole, the Board finds that the Veteran does not experience prostrating attacks occurring at least once per month. Accordingly, a rating in excess of 10 percent is not warranted. See 38 C.F.R. § 4.124a, DC 8100.

The Board notes that the Veteran is competent to report symptoms of his headaches, but not to identify a specific level of disability. The medical findings in this case directly address the criteria under which this disability is evaluated, and the objective medical evidence is accorded greater weight than the subjective complaints of increased symptomatology. The preponderance of the evidence is against the claim for an increased rating.


ORDER

Service connection for hypertension is denied.

Service connection for a bilateral knee disability is denied.

Entitlement to an initial rating in excess of 10 percent for service-connected headaches is denied.

Service connection for a dental disability for compensation purposes is denied.



______________________________________________
CAROLINE B. FLEMING
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs